**CAMPERO USA CORP., Plaintiff,**

v.

**STPC PARTNERS, L.P., a limited partnership, Defendant.**

**No. 05–22352–CIV–GRAHAM.**

United States District Court, S.D. Florida, Miami Division.

Jan. 3, 2006.

Edward M. Mullins, Edward H. Davis, Jr., Douglas J. Giuliano, Astigarraga Davis Mullins & Grossman, P.A., Miami, FL, for Plaintiff.

Robert Zarco, Robert M. Einhorn, Zarco Einhorn Salkowski & Brito, Miami, FL, for Defendant.

## ORDER

GRAHAM, District Judge.

**THIS CAUSE** came before the Court on Defendant's Motion to Stay Proceedings and Compel Arbitration and Incorporated Memorandum of Law [D.E. 3].

**THE COURT** has reviewed the Motion, the record in this matter and is otherwise duly advised in the premises. For the reasons explained below, the Court must **DENY** Defendant's Motion.

## I. FACTUAL BACKGROUND

In this action, Campero USA Corp. seeks a declaration that an Area Development Agreement between it and defendant STPC Partners, L.P. is terminated due to defaults by STPC. Campero USA Corp.

also seeks damages for STPC's alleged breach of the Agreement.

## A. STPC's Alleged Defaults

On or about August 8, 2002, Campero International S.A. and STPC entered into an Agreement under which STPC was required to establish and operate Pollo Campero franchise units within certain Development Areas specified in the Agreement. Campero International S.A. subsequently assigned the Agreement to Campero USA Corp. ("Campero" or "Plaintiff").

In its complaint, Campero alleges that STPC breached the Agreement by failing to comply with a Development Schedule included in the Agreement that required STPC to have seven (7) Pollo Campero franchise units operational by August 5, 2004. Campero alleges that by August 5, 2004, STPC had only three (3) operational Pollo Campero franchise units.

Starting on August 5, 2004, Campero and STPC began written communications regarding STPC's alleged default. On August 5, 2004, Campero sent a letter to Paul Magaziner, a majority partner at STPC, stating, "STPC has been notified that it is [in] default of the ADA by virtue of, inter alia, STPC's failure to comply with the terms of the Development Schedule set forth in the ADA." On November 16, 2004 Campero sent a letter to Mr. Magaziner stating "according to [the ADA], we should be opening our ninth (9) restaurant in South Texas... [but] only have three restaurants operating" and that "STPC will default again of its ADA on December 31st [2004]." On November 29, 2004, Campero sent a letter to Mr. Magaziner stating "assuming no other defaults have occurred under the 'ADA' ... Campero USA would consider reinstating STPC's rights to open new restaurants in the Development Area." On December 9, 2004, Campero and STPC entered in a Settlement Agreement and Mutual Release in which STPC acknowledged that "STPC has defaulted under the terms of the ADA by virtue of, *inter alia,* its failure to adhere to the terms of the Development Schedule."

On March 4, 2005, as a result of the alleged defaults by STPC, Campero terminated the Agreement, but gave STPC an "opportunity to reinstate the ADA, but only with respect to the Territory within Harris County with a specific number of units within said revised Territory." Campero's letter gave STPC until March 18, 2005 to submit a Revised Development Schedule and stated that "if no agreement is reached by April 1st, this offer shall be deemed withdrawn and the ADA deemed terminated." STPC agreed to reinstatement of the Agreement on these terms. On May 27, 2005, Campero extended the deadline for STPC to submit the Revised Development Schedule to June 20, 2005 and stated that "[i]f no agreement is reached by June 20, this offer shall be deemed withdrawn and the ADA will be deemed terminated." Finally, Campero again extended the deadline to June 28, 2005. STPC failed to submit the Revised Development Schedule by June 28, 2005.

## B. Methods For Termination

The Agreement provides two methods for termination, "6.02. Termination Without Prior Notice," which does not require a 30–day written notice and opportunity to cure, and "6.03. Termination After Notice," which does require 30–day written notice and opportunity to cure. Campero alleges that it terminated the Agreement pursuant to § 6.02(e). Section 6.02e provides:

> Termination Without Prior Notice. [Campero] shall have the right to terminate this Agreement without prior notice to [STPC] upon the occurrence of any or all of the following events, each of which shall be deemed an incurable breach of this Agreement... (e) If [STPC] defaults in any material obligation in re-

spect of which [STPC] twice previously within the preceding 12 months has received a notice of default from [Campero] with respect to the same or similar breach.

Campero alleges that it properly terminated the Agreement under section 6.02.(e) because: (1) STPC defaulted in a material obligation under the Agreement by "fail[ing] to comply with the Development Schedule, having only three (3) operative Unit Franchise Agreements by August 5, 2004, while under the Development Schedule STPC was required to have opened at least seven (7) units by that time"; and (2) the correspondence and Settlement Agreement and Mutual Release between the parties dated August 5, 2004, November 16, 2004, November 29, 2004, and December 9, 2004 constitute the required notices of default.

### C. Arbitration Provision

Section 7.02.(d) of the Agreement exempts from arbitration "[a]ny dispute for which [Campero] is entitled to terminate this Agreement without prior notice under the provisions of section 6.02 of this Agreement." Campero filed this action in this District Court, rather than pursuing arbitration, based on its assertion that it terminated the Agreement pursuant to section 6.02.(e).

For purposes of its Motion to Stay, STPC does not dispute that it defaulted in a material obligation, as required to terminate the Agreement without notice under § 6.02. However, STPC does argue that Campero did not properly provide it with notices of its default and therefore this matter does not fall within the exception to arbitration provided by § 7.02.(d).

Regarding the sending of notices, the Agreement provides in § 9.06(a):

All notices that the parties hereto may be required or may desire to give under or in connection with this Agreement shall be in writing and shall be sent on a priority delivery basis by reliable courier service (such as D.H.L., Federal Express or United Parcel Service), addressed as follows:

\* \* \* \* \* \*

(ii) If to Area Developer [STPC], to:

Mr. Carlos Ortiz

8918 Tanager

Houston, Texas 77036

(iii) If to Principals, to:

Mr. Paul Magaziner

3773 Richmond Ave.

Houston TX 77046

STPC argues that Campero's " 'notice of default' letters fail to specifically set forth STPC's alleged breach(es) of the Agreement. In addition, not all of the Plaintiff's 'notice of default' letters were sent on a priority delivery basis by reliable courier service. Moreover, [Campero's] letters were not sent by Campero International, S.A., the proper party to the Agreement, were not sent to all of the proper parties, and were not sent to the correct addresses as designated in Section 9.06(a) of the Agreement. [And] therefore, [Campero's] alleged 'notice of default' letters are completely defective and improper. As such [Campero's] instant causes of action are subject to the arbitration provision contained in the Agreement." Campero counters that whether the notices of default were deficient goes to the underlying merits and not to whether this dispute should be arbitrated or litigated.

## II. DISCUSSION

■ "Under the FAA, upon motion of a party, district courts must compel arbitration of all claims subject to arbitration." *American Express Financial Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir.1997) (citations omitted). "On the other hand, 'the FAA does not require

parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.'" *Id.* "Because parties are free to structure their arbitration agreements as they see fit, 'they may limit by contract the issues which they will arbitrate.'" *Id.*

 The terms of the contract control which disputes should be arbitrated and which should be litigated. *Id.* "The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir.1998) (abrogated on other grounds). "Presumption notwithstanding, 'the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.'" *Id.* (citations omitted).

Here, the parties' agreement expressly contemplates a dual dispute resolution system under which some disputes may be litigated while others are arbitrated. *See,* § 7.02. Pursuant to the Agreement, disputes permitting termination under § 6.02 are to be litigated, whereas disputes permitting termination under § 6.03 must be arbitrated. In its complaint, Campero seeks a declaration that the "STPC–ADA has been terminated" pursuant to § 6.02. Campero is therefore seeking a declaration from the Court that it properly terminated the Agreement pursuant to a section that permits litigation.

STPC's argument that arbitration must be compelled because Campero did not properly terminate the Agreement under § 6.02 based of alleged notice defects therefore goes to the merits of the underlying dispute. At this stage, the only issue for the Court is whether the parties intended to submit Campero's claim regarding its alleged proper termination under § 6.02 to arbitration or litigation. *Paladino,* 134 F.3d at 1057. The express language in § 7.02 of the Agreement clearly shows the parties' intention to submit this dispute to litigation. Additionally, notwithstanding the defects in notice asserted by STPC, STPC does not dispute that it actually received the letters sent to it by Campero in which Campero addressed STPC's alleged defaults. Based thereon, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Stay Proceedings and Compel Arbitration and Incorporated Memorandum of Law [D.E. 3] is **DENIED.**