Debra R. HERKO, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Michael R. Mazzella, Jr. Defendants.**

**No. 95–CV–0811A.**

United States District Court, W.D. New York.

Jan. 29, 1997.

Gross, Shuman, P.C., Hugh C. Carlin, Buffalo, NY, for Plaintiff.

Hancock & Estabrook, LLP, Janet D. Callahan, of counsel, Syracuse, NY, for Defendant, Metropolitan Life Ins. Co.

Thomas M. Moll, Buffalo, NY, for Defendant, Michael R. Mazzella, Jr.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the Hon. Hugh B. Scott by the Hon. Richard J. Arcara on October 12, 1995, for all pre-trial procedures. On October 4, 1996, Judge Scott recused himself from the case. The matter was then referred to the undersigned on October 10, 1996, and is presently before the court on Plaintiff's motion to compel discovery, filed on September 18, 1996, Defendants' motion to compel arbitration pursuant to the Federal Arbitration Act and to stay all federal proceedings, filed on October 17, 1996.[1]

---

1. The court has considered whether a motion to compel arbitration is a dispositive motion and has concluded it is not. Section 636(b)(1)(A) established that magistrate judges may hear and determine any pretrial matters pending before the court, save eight excepted motions, including motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A). While magistrate judges may hear the motions excepted from their "hear and determine" authority under § 636(b)(1)(A) they may only make proposed findings of fact and recommendations, which are subject to *de novo* review if a party

## BACKGROUND

Plaintiff, Debra R. Herko, filed this action on September 20, 1995, claiming discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and under the New York State Human Rights Law, N.Y.Exec.Law § 296. Specifically, Herko charges that while employed by Defendant Metropolitan Life Insurance Company ("MetLife"), she was subjected to sexual harassment, sexual discrimination, retaliation, and, eventually, constructively discharged by MetLife and her supervisor, Defendant Michael R. Mazzella, Jr. ("Mazzella") ("the Defendants"). Herko seeks injunctive and other equitable relief and compensatory and punitive damages for injuries she sustained as a result of alleged sexual harassment and other unlawful employment practices by the Defendants.

Defendants' answer ("the Answer"), filed on October 16, 1995, denies these allegations and raises three affirmative defenses, including that (1) Herko's pending action in New York State Supreme Court, Erie County, bars Herko from seeking relief in this court, (2) Herko has failed to mitigate her damages, and (3) Herko failed to commence this action in accordance with the procedures prescribed by applicable statutes.[2]

On October 19, 1995, Herko served Defendants with a Request for Production of Documents—First Set ("Discovery Request # 1"). On November 13, 1995, Defendants notified Herko of their objections to her requests for certain documents, particularly personnel files and job-related descriptions, claiming such requests were unreasonable, unduly burdensome, require the disclosure of confidential information, and protected by either the attorney-client or attorney work product privilege. Defendants responded to the balance of Discovery Request # 1 on December 1, 1995. Herko contends that the requested personnel files are highly relevant to this lawsuit as they may reasonably lead to the discovery of admissible evidence. As Defendants continue to refuse to provide Herko with responses to the disputed Discovery Requests, Herko moved, on August 19, 1996, to compel Defendants to provide the requested information.

On September 19, 1996, MetLife filed a Notice of Motion to compel arbitration and to

objects to the magistrate judge's recommendations. 28 U.S.C. § 636(b)(1)(B). In enacting Fed.R.Civ.P. 72, which describes the procedures to be followed by magistrate judges regarding pre-trial motions, Congress designated those motions which are excepted from a magistrate's hear and determine authority as "dispositive" and those motions which are not within such authority as "non-dispositive." *Burns v. 'Imagine Films Entertainment, Inc.*, 164 F.R.D. 594, 595 (W.D.N.Y.1996). Any motion that is neither listed nor analogous to a motion listed in § 636(b)(1)(A) falls within the non-dispositive group. *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 674, 112 L.Ed.2d 666 (1991). The dispositive/non-dispositive distinction is drawn because "[t]he Constitution requires that Article III judges exercise final decisionmaking authority." *Ocelot Oil Corp., v. Sparrow Industries*, 847 F.2d 1458, 1463 (10th Cir.1988). A motion to compel arbitration is not one of the listed dispositive motions and, based on the relevant portions of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA") this court has determined that it is not analogous to one of the listed motions. Specifically, § 9 of the FAA requires that the parties to arbitration must apply to the court for an order confirming an arbitration award, which shall be granted unless the award is vacated, modified or corrected in accordance with 9 U.S.C. §§ 10 and 11. Section 10 provides federal district courts with authority to make an order vacating an arbitration award, while § 11 permits modification of the same. Thus, as enacted, the FAA provides that there is no final exercise of Article III power until after arbitration is complete and the arbitrator's decision is either affirmed, modified, or vacated by the district court judge where the actions remain lodged. The court also notes that magistrate judges are permitted under § 636(b)(1)(A) to remand matters back to state courts resulting in the federal court's loss of jurisdiction over the action. *See, e.g., Holt v. Tonawanda Coke Corp.*, 802 F.Supp. 866, 868 (W.D.N.Y.1991). In contrast, when a federal court refers a matter to arbitration of a federal statutory right, the federal court never loses jurisdiction over the action as the arbitrator's decision is subject to the review of the courts. The court concludes, therefore, that a motion to compel arbitration is non-dispositive.

**2.** The Answer was filed by Hancock & Estabrook, LLP, on behalf of both MetLife and Mazzella. Mazzella subsequently retained and substituted Thomas M. Moll as counsel on April 22, 1996. MetLife continues to be represented by Hancock & Estabrook, LLP.

stay the federal proceedings in this action pending the outcome of arbitration, claiming that Herko's execution of a Uniform Application for Securities Industry Registration with the National Association of Securities Dealers ("NASD") bound her to submit to arbitration any claim that could arise between Herko and her firm, including employment disputes. Herko filed, on October 10, 1996, an affidavit in opposition to the motion to compel arbitration, along with her attorney's affidavit and a memorandum of law, arguing that she was never provided with the rules of the NASD upon executing the registration form, and that Defendants have waived their right to compel arbitration because their delay in requesting has resulted in prejudice to Herko as she has already incurred substantial expenses in pursuing her claims in court. Herko claims, moreover, that she executed the registration form as a prerequisite to becoming a registered securities dealer with the NASD, but that as she subsequently failed the licensing test, Herko never became fully registered with NASD and was, therefore, not bound by the terms of the registration form and as such could not be required to arbitrate her claims in accordance with terms of the registration form. Mazzella joined in MetLife's motions to compel arbitration and to stay proceedings by submitting a letter to the court from his attorney, filed on October 31, 1996. Although Defendants did not respond to Herko's motion to compel discovery, on October 10, 1996, Herko filed a sur-reply in the form of a memorandum of law in support of her motion to compel discovery.

Oral argument of these motions was deemed unnecessary.

For the reasons as set forth below, Defendants' motion to compel arbitration and to stay the federal proceedings is GRANTED; Herko's motion to compel discovery is DISMISSED as moot.

## FACTS [3]

Herko commenced employment with Met-Life on November 22, 1993, as a temporary special agent and was assigned to MetLife's A37 University Branch Office ("the MetLife office"). At all times relevant to this matter Mazzella was the manager of the MetLife office and as such he possessed the actual or apparent authority to discipline, fire, or otherwise affect Herko's compensation, terms, conditions, or privileges of employment with MetLife.

According to Herko, she quickly became a highly productive employee who generated much business for MetLife. On January 31, 1994, Herko was appointed as an Account Representative, the position which she held until March 13, 1995 when Herko alleges she was constructively discharged because of the alleged sexual harassment and retaliation. In conjunction with her position as an account representative Herko executed, on February 2, 1994, a Uniform Application for Securities Industry Registration ("Form U–4") as required of all NASD licensed security representatives prior to becoming registered with their respective firms. Herko does not dispute that it was a condition of her employment that she execute the form. The Form U–4 provides, in pertinent part, that the applicant, Herko, agrees to "arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person that is required to be arbitrated under the rules, constitution, or by-laws of the organizations indicated in item 10, as may be amended from time to time, and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction."

Although Herko executed the Form U–4, she subsequently failed the licensing test and never actually became registered with the NASD. Nevertheless, Herko continued to work in the MetLife office until March 1995 when she claims she was constructively discharged from MetLife. Herko contends that during that time period she was subjected to a sexually hostile and discriminatory work environment. Specifically, Herko alleges that beginning in February 1994, Mazzella made "unwelcome sexual advances and overtures" to her which included sexually suggestive behavior, requests for dates and the spreading of rumors that Mazzella and Her-

---

**3.** The fact statement is taken from the pleadings and motion papers filed in this action.

ko were involved in an intimate relationship. Herko also claims that Mazzella withheld product support from her in an attempt to coerce her into acquiescing in Mazzella's demands and that the lack of product support adversely affected her compensation. Herko further claims that despite her repeated refusals to Mazzella's demands, Mazzella persisted in his solicitations toward her until November 1994 when Mazzella's wife confronted Herko at the MetLife office and, in the presence of others, accused Herko of having an affair with Mazzella. Following that incident, Mazzella allegedly demanded that Herko transfer out of the MetLife office and withdrew all product support from Herko to coerce her to transfer to another MetLife office.

In January 1995, Herko's attorneys advised MetLife of Herko's objections to the alleged unlawful discriminatory conduct to which Herko was being subjected and warned MetLife of Herko's intent to sue. Herko thereafter commenced an action in Supreme Court, Erie County, alleging violations under New York State Human Rights Law, N.Y. Exec. Law § 296. According to Herko, Defendants then engaged in acts of mockery and harassment intended to retaliate against Herko for filing the suit. Herko claims that as a result of Defendants' actions, she was compelled to tender her resignation on March 13, 1995. For their defense, Defendants assert Herko was terminated from MetLife on March 3, 1995 for failing to perform job related duties.

Herko filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 8, 1995. On September 1, 1995, Herko received a Notice of Right to Sue from the EEOC; this lawsuit was then initiated.

## DISCUSSION

### 1. *Motion to Compel Arbitration*

#### a. *Arbitrability*

■ The agreement to arbitrate encompassed in the Form U–4 is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Under the FAA, a court must compel a party to an arbitration agreement who declines to proceed to arbitration to arbitrate. 9 U.S.C. § 4. The FAA leaves no discretion with the district court in the matter. *McMahan Securities Co. L.P. v. Forum Capital Markets, L.P.*, 35 F.3d 82, 85–86 (2d Cir.1994). There is a strong presumption in favor of arbitrability, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The Supreme Court, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), held that federally created "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer, supra*, at 26, 111 S.Ct. at 1652. Title VII claims are considered as such statutory claims. *Id.* at 34, 111 S.Ct. at 1656. The Court explained that by agreeing to arbitrate a statutory claim resolution of the dispute occurs in an arbitral, rather than a judicial forum, but the parties retain the same rights afforded by the statute. *Id.* at 26, 111 S.Ct. at 1652.

*Gilmer* specifically held that claims brought under the Age Discrimination in Employment Act ("ADEA") were subject to arbitration when the employee bringing the ADEA claim had previously executed a Uniform Application for Securities Industry Registration or Transfer, the same type of document executed by Herko. The Form U–4 contains an arbitration clause requiring any employee who executes such form as a condition of Employment to submit any disputes or controversies involving his employer, customers, or any other person, to arbitration.

Although the Second Circuit has not yet ruled on the question of whether civil rights claims under Title VII are subject to arbitration, other circuits considering the issue have found that cases arising under Title VII are subject to arbitration under federal law. *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1487 (10th Cir.1994); *Bender v. A.G. Edwards*, 971 F.2d 698, 699 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 935 (9th Cir.

1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991). District courts within the Second Circuit have also uniformly found Title VII claims to be arbitrable. *Pitter v. Prudential Life Ins. Co. of America,* 906 F.Supp. 130, 139 (E.D.N.Y.1995); *DiCrisci v. Lyndon Guar. Bank of New York,* 807 F.Supp. 947, 952 (W.D.N.Y.1992). *Gilmer* has also been held to require arbitration in other actions by employees, who had executed 3 Form U–4 in connection with their employment, against member firms of the New York Stock Exchange. *Haviland v. Goldman, Sachs, & Co.,* 947 F.2d 601 (2d Cir.1991) (stay of federal proceedings pending arbitration of terminated employee's RICO and fraud claims against employing firm, a member of the NYSE, affirmed pursuant to *Gilmer,* but stay of proceedings pending arbitration of identical claims against another firm denied).

While Plaintiff does not contend that Title VII claims in general are not subject to arbitration, Plaintiff does claim that her claim is not subject to arbitration. In the absence of an express agreement by the parties to the contrary, the question of whether the parties agreed to arbitrate a dispute is one for the court to resolve. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 939–41, 115 S.Ct. 1920, 1922, 131 L.Ed.2d 985 (1995). The Supreme Court stated that this conclusion "flow(s) inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes— that the parties have agreed to submit to arbitration." *Id.*

■ First, Herko contends that she did not enter into a valid agreement to arbitrate her claim because she was not provided with a copy of the rules, constitutions, or by-laws of the NASD, when she signed the Form U–4. Thus, Plaintiff asserts that her execution of the form did not constitute a knowing agreement to arbitrate employment disputes. In *Hall v. MetLife Resources/Division of Metropolitan Life Insurance Company,* 1995 WL 258061 (S.D.N.Y.1995), the plaintiffs, all of whom executed the Form U–4s as a requirement of their employment, brought a Title VII action against their employer.

Plaintiffs contended that, although they executed the forms, they were unaware that signing the Form U–4 indicated their agreement to arbitrate employment disputes with the defendant employer. Rejecting that argument, and compelling arbitration, the court, noting that, under New York law, in the absence of fraud or other wrongdoing, a person who signs a contract is conclusively presumed to know its contents and to assent to them, held that plaintiffs could not avoid their obligation to arbitrate simply by stating that they did not know what the Form U–4 contained. *Hall, supra,* at *3.

In this case, Herko asserts that she signed the Form U–4 when she was informed that in order to obtain her security license, she had to complete her registration. There is no allegation that this contention was untrue. Herko claims, however, that she was never provided with copies of NASD rules, regulations, and by-laws concerning the scope of the arbitration clause. In support of her contention, Herko cites *Berger v. Cantor Fitzgerald Securities,* 942 F.Supp. 963 (S.D.N.Y.1996), for the proposition that the issue of notice is relevant to both the scope of an arbitration agreement and to the threshold question of whether a voluntary agreement to arbitrate exists. In *Berger,* the court refused to order arbitration under the terms of the Form U–4 because it found that the defendant had induced plaintiff to sign the Form U–4 by misrepresentation, high pressure tactics and unfair dealing.

■ As discussed, the fact that Herko may not have been provided with the relevant rules and regulation governing the arbitration clause found in the Form U–4 is irrelevant as under New York law, absent fraud or other wrongdoing, a person who signs a contract is conclusively presumed to know its contents and to assent to them. *Hall, supra,* at *3. A contrary rule would, of course, invite unacceptable uncertainty into the day-to-day world of commercial and other business dealings. It is for that reason that in contract formation it is objective conduct and not subjective intent that controls. *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir.1993), *citing Level Export Corp. v. Wolz,*

*Aiken & Co.*, 305 N.Y. 82, 111 N.E.2d 218, 221 (1953). In this case, Herko has not alleged fraud or other wrongdoing by Defendant in requiring her to execute the Form U–4. As such, Herko is conclusively presumed to have known that disputes between Herko and her employer would be subject to arbitration. *Hall, supra*, at *3. Accordingly, the fact that Herko was not provided with the NASD rules, regulations and by-laws regarding the arbitration provision when she signed the Form U–4 does not change the result that the arbitration provision remains applicable to Herko.

■ Second, Herko contends that she signed the Form U–4 only as a prerequisite to taking the licensing test that she needed to pass in order to obtain her security license and to become registered with NASD and that she was never informed that she would be bound by the provisions of the Form U–4 even if she failed the licensing exam. Without saying so directly, the implication of Herko's contention is that there was a failure of consideration rendering the agreement unenforceable.

Defendants argue that when Herko executed the Form U–4, the NASD code provided for mandatory arbitration of "[a]ny dispute, claim, or controversy . . . arising out of the employment or termination of employment of associated person(s) with any member . . . between or among members and associated persons." Defendants' Memorandum of Law, at p. 4. Further, an "associated person" is defined by the NASD by-laws as "any natural person engaged in the investment banking or securities business who is directly or indirectly . . . controlled by [a] member *whether or not any such person is registered* or exempt from registration with the Corporation pursuant to these By-Laws." Defendants' Memorandum of Law, at p. 4 (emphasis added). As MetLife is a "member" of the NASD, and as Herko is a natural person engaged in the investment banking or securities business who was directly or indirectly controlled by MetLife, Defendants urge that Herko was thus an "associated person" within the meaning of the NASD by-laws, and was, upon execution of the Form U–4, obligated to arbitrate any

claims arising out of her employment with MetLife. Herko does not contend that if the arbitration clause covers her claims it applies to both MetLife and Mazzella.

Neither Herko nor Defendants have pointed to any precedent in direct support of their respective contentions and this court's research has located only one case on point. In *Foley v. Presbyterian Ministers' Fund,* 1992 WL 63269 (E.D.Pa.1992), the plaintiff also alleged that he was not bound by the provisions of the Form U–4 to arbitrate an employment discrimination claim as he had failed the NASD securities test and therefore never became a registered securities dealer. The court held that "[t]he undertakings contained in the Form U–4 were contingent on executing the form, not on becoming a registered dealer." *Id.* at *1. Specifically, the court noted that NASD applicants were required to make agreements to arbitrate as consideration for NASD organizations and states receiving and considering their applications. *Id.*

In this case the court finds that, as in *Foley,* Herko's execution of the Form U–4 was consideration given in exchange for consideration of her membership in NASD organizations. Additionally, as discussed, under New York law execution of a contract by itself, absent fraud or other wrongdoing, establishes a conclusive presumption that the signer was aware of contents of the contract, and assented to them. As Herko has not alleged any fraud or wrongdoing on the part of Defendants calculated to induce her to sign the Form U–4, the court finds that Herko was bound by the terms of the Form U–4, including the arbitration clause. Her sexual harassment claims against Defendants are thus arbitrable pursuant to the Form U–4.

**b. Waiver**

■ Herko urges this court to find that, if a valid agreement to arbitrate exists between her and Defendants, that Defendants have waived their right to compel such arbitration as Defendants' delay in raising the issue has caused Herko substantial prejudice. Plaintiff's Memorandum of Law in Opposition to Arbitration, at p. 3. The rule in the

Second Circuit is that "litigation of substantial issues going to the merits may constitute a waiver of arbitration." *Sweater Bee by Banff v. Manhattan Industries,* 754 F.2d 457, 461, *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). Whether a party has waived its right to arbitration by its conduct is a purely legal question which the district courts have broad discretion in deciding. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995). Further, in view of the "dominant federal policy favoring arbitration, waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985) (*citing Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972), and *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968)).

Defendants' eighteen month delay in seeking arbitration is not sufficient to constitute a waiver of the right absent some showing of prejudice to Herko as "[t]he legislative history of the [Federal Arbitration] Act established that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate," *Dean Witter Reynolds Inc. v. Lamar Byrd,* 470 U.S. 213, 219, and expeditious resolution of claims was not the goal of the FAA. *Rush, supra,* at 888. Nor does the failure to raise the agreement to arbitrate in the Answer constitute a waiver of arbitration absent some showing of actual prejudice to Herko. *Rush, supra,* at 889, *citing ITT World Communications, Inc. v. Communications Workers of America, AFL–CIO,* 422 F.2d 77, 82 (2d Cir.1970).

■ Herko cites *Com–Tech Associates v. Computer Associates International, Inc.,* 938 F.2d 1574 (2d Cir.1991) in support of her contention that requiring her to submit to arbitration at this time will result in undue prejudice to her. *Com–Tech* is similar to this case as in *Com–Tech* the defendants had also failed to raise the arbitration issue in their answer and more than eighteen months had passed before the defendants filed their motion to compel arbitration. However, *Com–Tech* is distinguishable from the instant case as there the court noted that the defendants

had also subjected the plaintiff to the expense and time involved in conducting extensive depositions and defending several pre-trial motions, including motions for judgment on the pleadings and for partial summary judgment, and that the motion to compel arbitration was brought only four months before the scheduled trial date. *Com–Tech, supra,* at 1576. Here, Defendants have not made any motions, other than the present motion to compel arbitration. Additionally, discovery is only in the initial stage and no trial date has yet been set.

The FAA established that "as a matter of federal law, any doubts concerning the scope an arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital, supra,* at 24–25, 103 S.Ct. at 941. Although eighteen months had passed between the time Defendants answered the complaint and moved to compel arbitration, and while both sides have been engaged in some discovery, the court finds that neither side has engaged in the level of protracted litigation with the potential for substantial amounts of wasted legal costs that would necessitate finding that Defendants had waived their right to arbitration of Herko's claims. Even if there had been more discovery, such discovery would be helpful to Herko in prosecuting her claims in the arbitration forum.

The court therefore finds that Herko, despite failing the securities licensing examination and regardless of whether copies of the NASD regulations were ever provided to her, subjected herself to complying with the provisions of the NASD rules and regulations, including arbitration, upon executing the Form U–4. The court also finds that Defendants did not waive their right to seek arbitration of Herko's claims. As such, the court directs that Herko's employment disputes which comprise the subject of this lawsuit be submitted to arbitration in accordance with the applicable NASD rules.

### 2. *Motion to Compel Discovery*

As the court has granted Defendants' motion to compel arbitration and therefore will

stay further proceedings in this action, Herko's motion to compel discovery need not be further addressed by this court and, accordingly, is DISMISSED as moot.

## CONCLUSION

Based on the foregoing, Defendants' motion to compel arbitration and to stay further proceedings in this action is GRANTED; Plaintiff's motion to compel discovery is DISMISSED as moot.

SO ORDERED.