**POWERSHARE, INC., Plaintiff,**

v.

**SYNTEL, INC., Defendant.**

**Civil Action No. 08–11342–NG.**

United States District Court,
D. Massachusetts.

Dec. 1, 2008.

Sharleen Joy Davis, K & L Gates LLP, Rory J. Fitzpatrick, Cetrulo & Capone LLP, Boston, MA, Robert B. Levin, Paul Mark Sandler, Shapiro Sher Guinot & Sandler, Baltimore, MD, Pro Hac Vice, for Plaintiff.

John R. Bauer, Claire E. Newton, Steven P. Perlmutter, Robinson & Cole LLP, Boston, MA, for Defendant.

## MEMORANDUM OF DECISION AND ORDER ON MOTIONS REGARDING ARBITRATION

DEIN, United States Magistrate Judge.

### I.  INTRODUCTION

The plaintiff, PowerShare, Inc., has brought an action against the defendant, Syntel, Inc., alleging that Syntel is liable for breach of contract and committed unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A. PowerShare is seeking monetary damages, an accounting, and a declaratory judgment, and has demanded a jury trial.  Syntel denies any liability, and has commenced an arbitration proceeding against PowerShare which is pending in Michigan.

The parties' contracts contain an arbitration clause.  PowerShare contends that the clause gives it the option of resolving its disputes either through arbitration or court proceedings, while Syntel contends that arbitration is mandatory.  Consequently, this matter is presently before the court on "Defendant's Motion to Order a Stay Pending Arbitration" (Docket No. 12) and on "Plaintiff's Motion to Stay Arbitration Initiated by Defendant and for Determination that the Disputes Set Forth in the Complaint are not Referable to Arbitration" (Docket No. 15).

For the reasons detailed herein, this court concludes that arbitration is optional under the agreements.  Therefore, the Defendant's motion seeking to stay this litigation (Docket No. 12) is DENIED, and the Plaintiff's motion seeking to stay arbitration proceedings initiated by Syntel (Docket No. 15) is ALLOWED.

### II.  STATEMENT OF FACTS

■  Both parties have asked the court to determine whether arbitration is mandatory or optional under the contracts which govern their relationship.  Both parties have informed the court that they do not intend to offer any extrinsic evidence concerning the meaning or intent of the contract, nor do they want the opportunity to engage in any discovery.  They further have informed the court that while Syntel drafted the agreement, it was done with considerable input from PowerShare so, despite some language to the contrary in PowerShare's memorandum, neither party is claiming that the agreement should be construed against the other as a matter of law.  *See Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 25 (1st Cir.2000) ("numerous courts have employed the tenet of *contra proferentem* in construing ambiguities in arbitration agreements against the drafters.").  Thus, the parties have asked the court simply to interpret the following provision which is found in the two contracts at issue in this litigation:

All disputes, controversies and claims directly or indirectly arising out of or in relation to this Agreement or the validity, interpretation, performance, breach, enforceability of the Agreement (collectively referred to as "Dispute") shall be resolved amicably between Syntel and PowerShare at an operational level in consultation with the top management of both companies.  If any such Dispute cannot be resolved, as stated above, the same shall be settled in accordance with the principles and procedures of the American Arbitration Association and per the decision of an accredited arbitrator acceptable to both parties.  **Nothing in this clause shall prejudice Syntel or PowerShare's right to seek injunctive relief or any other equitable/legal relief or remedies available under law.**  Neither party may assign or transfer this Agreement without the prior written consent of the other party.  This Agreement shall be governed in all respects by the prevailing laws of the United States of America.

(Emphasis added). The parties agree that the issues in dispute between them fall within the scope of the arbitration clause—the sole issue raised by the present motions is whether arbitration is mandatory under the above-quoted provision.

PowerShare commenced this action on August 6, 2008. On September 12, 2008, Syntel filed a Demand for Arbitration with the American Arbitration Association ("AAA") in Michigan. PowerShare is based in Massachusetts, while Syntel is based in Michigan. PowerShare has filed a response to the Arbitration Demand, and has objected to proceeding in Michigan. However, the Michigan AAA has determined that the arbitration is appropriate in that state. *See Seguro de Servicio de Salud de P.R. v. McAuto Sys. Group, Inc.,* 878 F.2d 5, 9 n. 6 (1st Cir.1989) (AAA's locale determination will not be overturned by court unless it was "rendered in bad faith or in 'manifest disregard of the law.' ") (internal citation omitted).

Concurrent with filing its demand for arbitration, Syntel, on September 12, 2008, filed its motion seeking to stay the litigation pending arbitration. (Docket No. 12). On September 26, 2008, PowerShare filed its motion to stay the arbitration. (Docket No. 15). After briefing was completed, a hearing on the motions was held on November 12, 2008.

### III. *ANALYSIS*

■ The relevant legal principles are well established, and while easy to recite they are more difficult to apply in the instant case. Thus, the purpose of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, is "to reverse the longstanding judicial hostility to arbitration agreements and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 89, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000) (internal punctuation and citation omitted). "[A]s a matter of federal policy, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]' " *Paul Revere Variable Annuity Ins. Co.,* 226 F.3d at 19 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). While arbitration agreements are to be placed on an equal footing with other contracts, the FAA " 'does not require parties to arbitrate when they have not agreed to do so.' " *BCS Ins. Co. v. Wellmark, Inc.,* 410 F.3d 349, 351 (7th Cir.2005) (quoting *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002)). It is for the court to interpret the contract to determine if the parties have agreed to submit a matter to arbitration, "and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital,* 415 F.3d 145, 149 (1st Cir.2005) (quotations and citation omitted). Similarly, a party "cannot be forced to arbitrate against its will because the arbitration clause permits, but does not require, arbitration." *Summit Packaging Sys., Inc. v. Kenyon & Kenyon,* 273 F.3d 9, 12 (1st Cir.2001). Pursuant to the FAA, 9 U.S.C. §§ 3, 4, "a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement," and must "issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement[.]" *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

In the instant case, the language this court finds critical is the sentence "Nothing in this clause shall prejudice Syntel or PowerShare's right to seek injunctive relief or any other equitable/legal relief or remedies available under law." Up until that sentence, the parties had expressed

their intention to attempt to resolve their disputes as informally as possible, first through discussion and then arbitration if necessary. If the paragraph had ended prior to the critical sentence, it would have seemed clear that the parties wanted all possible disputes which could not be resolved amicably to be resolved through arbitration as a last resort. By adding the sentence, however, the parties were expressing their intention not to be limited to the earlier sentences. Even more importantly, they were expressing their intention not to give up any rights or remedies they may otherwise have had. The additional sentence does not further restrict the parties' options, but rather expands them. As a matter of fact, to obtain all possible "equitable/legal relief or remedies available under law," a party must be able to have access to the courts.[1] Thus, this court finds that the parties intended to allow suit to be brought in court.

■ Syntel argues that this language merely confirms the arbitrator's right to grant all types of legal or equitable relief. This argument is not persuasive. First of all, there does not seem to be any reason to confirm that an arbitrator has the rights that an arbitrator has—such an interpretation would make the sentence pointless. "[I]t is a basic principle of contract law that constructions that render contract terms meaningless should be avoided[.]" *Summit Packaging Sys.*, 273 F.3d at 12. Second of all, Syntel's argument is limited to "relief" and ignores the reference to "remedies available under law." A "remedy is the means employed to enforce a right or redress an injury," and includes jury trials. *Curcuru v. Rose's Oil Serv., Inc.*, 441 Mass. 12, 18, 802 N.E.2d 1032, 1037 (2004) (internal quotation omitted) (holding that the *"remedy of a jury trial*

for maritime claims brought in State Court" has been preserved by Death on the High Seas Act) (emphasis added). If the parties were limited to arbitration, they would be giving up their remedy of a jury trial. Such an interpretation is inconsistent with the language used by the parties, which evidences a clear intent of the parties not to give up any potential remedies they may have. Finally, even assuming that "the parties' full subjectively intended meaning of the provision is unclear, the literal language ... is not. Other considerations being inconclusive," the court has found it "fair" in an "extremely close case to let matters turn on the literal language used by the parties even though a less literal reading is also quite plausible." *Principal Mut. Life Ins. Co. v. Racal–Datacom, Inc.*, 233 F.3d 1, 4 (1st Cir. 2000). In order to effectuate the literal language used by the parties in the instant case, PowerShare must be entitled to seek all "remedies available under law," which includes a right to trial by jury. Whether or not this precise remedy was contemplated by the parties when their agreements were executed, the literal language of the agreements preserves the parties' rights to a jury trial.

Syntel relies on the presumption in favor of arbitration to argue that all ambiguities in the contract should be construed in favor of finding the dispute arbitrable. Even assuming that the agreement is ambiguous (which both parties deny), this argument must fail. As the court summarized the applicable principles in *BCS Ins. Co. v. Wellmark, Inc.*:

> The language of the parties' agreement determines arbitrability, and "[w]hile ambiguities in the language of the agreement should be resolved in favor of

---

1. This is also consistent with the structure of the paragraph, which provides for escalating levels of conflict resolution.

arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. at 294, 122 S.Ct. 754 (citation omitted) . . . Further, while "[t]here is no denying that many decisions proclaim that federal policy favors arbitration, . . . this differs from saying that courts read contracts to foist arbitration on parties who have not genuinely agreed to that device." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir.2003). Just "[a]s there is no thumb on the scale in favor of one judicial forum over another, there is no preference for arbitration over adjudication either." *Id.* at 346. The judicial task is "to implement the *parties'* preferences between judicial and arbitral forums, not to displace that choice with one of our own." *Id.*

*BCS Ins. Co.*, 410 F.3d at 351–52. *See also Campero USA Corp. v. STPC Partners, L.P.*, 410 F.Supp.2d 1268, 1272 (S.D.Fla.2006) ("Presumption notwithstanding, the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.") (quotations and citation omitted). In the instant case, given that the critical sentence expresses an intention to expand the parties' rights and remedies, and not limit them, and given that the literal language of the provision confirms the parties' rights to seek a jury trial (among other remedies), the presumption cannot be used to rewrite the parties' agreements.

■ Furthermore, the presumption has no application in the instant case because "generally speaking, the presumption in favor of arbitration applies to the resolution of scope questions." *Paul Revere Variable Annuity Ins.*, 226 F.3d at 25. "A scope question arises when the parties have a contract that provides for arbitration of some issues and it is unclear whether a specific dispute falls within that contract." *Id.* (quotations and citation omitted). Here, the question is whether the parties have a contract that provides for mandatory arbitration at all, not whether a specific dispute falls within the arbitration provision. Therefore, the presumption should not come into play. *See id.*; *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir.2006) (presumption favoring arbitration applies where there is a scope question at issue).

■ In sum, arbitration is "a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit." *Summit Packaging Sys.*, 273 F.3d at 14 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989)). In this case, the parties structured their agreement to keep all of their options open, including the option to have their disputes resolved in court.

## IV. CONCLUSION

For all the reasons detailed herein, the Defendant's motion seeking to stay this litigation (Docket No. 12) is DENIED, and the Plaintiff's motion seeking to stay arbitration proceedings initiated by Syntel (Docket No. 15) is ALLOWED.