# United States Court of Appeals

## For the First Circuit

No. 09-1625

POWERSHARE, INC.,

Plaintiff, Appellee,

v.

SYNTEL, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]
[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Steven P. Perlmutter, with whom Christopher S. Feudo, Robinson & Cole LLP, Dennis M. Haffey, Stephen W. King, and Dykema Gossett PLLC were on brief, for appellant.
Paul Mark Sandler, with whom Robert B. Levin, John J. Lovejoy, Shapiro Sher Guinot & Sandler, Rory Fitzpatrick, and Cetrulo & Capone were on brief, for appellee.

March 1, 2010

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**.  Two corporations, one based in Massachusetts, and the other in Michigan, entered into a business arrangement (the Agreement).  After a falling-out, one of the contracting parties, PowerShare, Inc., commenced a civil action in the district court to enforce the Agreement.  The defendant, Syntel, Inc., countered by instituting a parallel arbitration proceeding and moving to stay litigation pending arbitration.  The district court denied the motion, and Syntel now appeals.  We have jurisdiction pursuant to the Federal Arbitration Act to review the interlocutory order denying Syntel's motion to stay litigation pending arbitration.  See 9 U.S.C. § 16(a)(1)(A); Combined Energies v. CCI, Inc., 514 F.3d 168, 170 (1st Cir. 2008).

The question that lies at the heart of the appeal is whether the Agreement contains a mandatory arbitration provision.  The district court thought not.  We hold that the Agreement does so provide and therefore reverse.  Along the way, we address, as a matter of first impression at the federal appellate level, an issue concerning the standard of review to be applied by a district judge when reviewing a magistrate judge's disposition of a motion to stay litigation pending the completion of a parallel arbitration proceeding.

## I.  BACKGROUND

PowerShare and Syntel entered into the Agreement on July 16, 2003.  Their evident purpose was to form a joint venture to

handle the outsourcing needs of third parties.  Paragraph 18 of the Agreement reads in relevant part:[1]

> All disputes, controversies and claims directly or indirectly arising out of or in relation to this Agreement or the validity, interpretation, performance, breach, enforceability of the Agreement (collectively referred to as "Dispute") shall be resolved amicably between Syntel and PowerShare at an operational level in consultation with the top management of both companies.  If any such Dispute cannot be resolved, as stated above, the same shall be settled in accordance with the principles and procedures of the American Arbitration Association and per the decision of an accredited arbitrator acceptable to both parties. Nothing in this clause shall prejudice Syntel or PowerShare's right to seek injunctive relief or any other equitable/legal relief or remedies available under law.

Some five years after the execution of the Agreement, a dispute arose.  On August 8, 2008, PowerShare invoked diversity jurisdiction, 28 U.S.C. § 1332(a), and filed suit against Syntel, claiming breach of the Agreement, in the United States District Court for the District of Massachusetts.  PowerShare accompanied its complaint with a request for jury trial.  See Fed. R. Civ. P. 38(b).

In response, Syntel lodged a demand for arbitration with the American Arbitration Association (AAA).  It simultaneously moved in the district court to stay PowerShare's action pending resolution

---

[1] The parties agree that other material at the beginning and end of Paragraph 18 is, for present purposes, uncontroversial.  We thus quote the three relevant sentences of the paragraph and henceforth refer to them as the "first," "second," and "third" sentences.  This practice emulates what the parties have done.

-3-

of the parallel arbitration proceeding. Not to be outdone, PowerShare filed a motion to stay the arbitration.

The district court assigned the motions to a magistrate judge, who denied Syntel's motion to stay the litigation and granted PowerShare's cross-motion to stay the arbitration. PowerShare, Inc. v. Syntel, Inc., 607 F. Supp. 2d 240, 244 (D. Mass. 2008). In her rescript, the magistrate judge concluded that, under the Agreement, arbitration was optional. Id. at 241. She reasoned that the third sentence of Paragraph 18, which refers to "any other equitable/legal relief or remedies available under law," made manifest the parties' intention to allow litigation because a jury trial is a remedy "available under law." Id. at 243. In so holding, the magistrate judge rejected Syntel's argument that the federal policy favoring arbitration should be given weight. Rather, she declared that this policy applies only to the resolution of "scope" questions, not to questions about whether a contract calls for mandatory arbitration at all. Id. at 244.

Syntel appealed this decision to the district judge, Fed R. Civ. P. 72(a), who issued an electronic order stating that the decision was "not clearly erroneous or contrary to law." This timely appeal followed.

## II. ANALYSIS

We divide our analysis into two parts. First, we clarify the standard of review to be employed by a district judge when

reviewing a magistrate judge's order on a motion to stay litigation pending the resolution of a parallel arbitration proceeding. Only then do we proceed to the merits.

## A.

The Federal Magistrates Act confers authority upon district judges to designate magistrate judges to hear pretrial motions. 28 U.S.C. § 636(b)(1). Magistrate judges serve as aides to, and under the supervision of, district judges; but magistrate judges are not themselves Article III judicial officers. Given their status as Article I judicial officers, magistrate judges ordinarily may not decide motions that are dispositive either of a case or of a claim or defense within a case.[2] This is so because "[t]he Constitution requires that Article III judges exercise final decisionmaking authority." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1463 (10th Cir. 1988); see Stauble v. Warrob, Inc., 977 F.2d 690, 693-94 (1st Cir. 1992). Dispositive motions include those enumerated in 28 U.S.C. § 636(b)(1)(A), but this list is not exhaustive; rather, it simply "informs the classification of other motions as dispositive or nondispositive." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 5-6 (1st Cir. 1999).

Consistent with this dichotomy between dispositive and non-dispositive motions, Federal Rule of Civil Procedure 72 sets out

---

[2] We say "ordinarily" because there is an exception for cases in which all parties consent. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The record reveals no such consent here.

-5-

two separate standards of review to be employed by a district judge in reviewing a magistrate judge's determinations. When a magistrate judge decides a non-dispositive motion, the district judge may, given a timely appeal, set aside the order if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Absent a timely appeal, the order stands. Id. When, however, a magistrate judge passes upon a dispositive motion, he or she may only issue a recommended decision, and if there is a timely objection, the district judge must engage in de novo review. Fed. R. Civ. P. 72(b). Absent a timely objection, the recommended decision ripens into an order. Id.

Here, the district judge employed the "clearly erroneous or contrary to law" standard applicable to non-dispositive motions under Rule 72(a). Syntel protests that its motion to stay the litigation to allow resolution of the parallel arbitration proceeding was, in effect, dispositive of the court case and, thus, should have engendered de novo review by the district judge pursuant to Rule 72(b).

No court of appeals has decided this precise question. Nevertheless, a number of district courts have held that motions to stay litigation and compel related arbitration are non-dispositive motions under Rule 72(a). See, e.g., Gonzalez v. GE Group Adm'rs, Inc., 321 F. Supp. 2d 165, 166 (D. Mass. 2004); Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 865 (D. Or. 2002); All Saint's

-6-

Brands, Inc. v. Brewery Group Den., A/S, 57 F. Supp. 2d 825, 833 (D. Minn. 1999); Herko v. Metro. Life Ins. Co., 978 F. Supp. 141, 142 n.1 (W.D.N.Y. 1997). But see Flannery v. Tri-State Div., 402 F. Supp. 2d 819, 821 (E.D. Mich. 2005) (concluding that such a motion, if granted, is dispositive because it "has the practical effect of allowing the case to proceed in a different forum").

Motions to stay litigation pending the resolution of parallel arbitration proceedings are not among the motions enumerated in 28 U.S.C. § 636(b)(1)(A). Nor are they of the same character as the listed motions. A federal court's ruling on a motion to stay litigation pending arbitration is not dispositive of either the case or any claim or defense within it. Although granting or denying a stay may be an important step in the life of a case (lawyers are keenly aware that there are substantive consequences to whether or not a stay is granted), in the last analysis a stay order is merely suspensory. Even if such a motion is granted, the court still retains authority to dissolve the stay or, after the arbitration has run its course, to make orders with respect to the arbitral award. See Federal Arbitration Act, 9 U.S.C. § 9 (permitting parties to apply to the court for an order confirming the award); id. § 10 (providing district courts with authority to vacate an arbitral award); id. § 11 (providing district courts with authority to modify an arbitral award). We acknowledge that the scope of judicial review of arbitral awards is very narrow,

but that does not extinguish such review.  See Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990).  Thus, there is no final exercise of Article III power at the time the court acts on the motion to stay.  See Herko, 978 F. Supp. at 142 n.1.

In light of these realities, we conclude that, from a procedural standpoint, the district judge acted appropriately in reviewing the magistrate judge's denial of Syntel's motion to stay under the "clearly erroneous or contrary to law" standard elucidated in Rule 72(a).

In this case arbitrability depended on interpreting a contractual term, a question of law for the courts.  See Combined Energies, 514 F.3d at 171.  Nothing in the contract expressly provided that an arbitrator would decide questions of arbitrability instead.  See Coady v. Ashcraft & Gerel, 223 F.3d 1, 8-9 (1st Cir. 2000).  When, as in this case, review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the "contrary to law" branch of the Rule 72(a) standard.  See, e.g., Haines v. Liggett Group Inc., 975 F.2d 81, 91 (3d Cir. 1992); EEOC v. Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d 603, 605-06 (W.D. Tenn. 2009); Sprint Commc'ns Co. v. Vonage Holdings Corp., 500 F. Supp. 2d 1290, 1346-47 (D. Kan. 2007); 14 James Wm. Moore et al., Moore's Federal Practice § 72.11[1][b] (3d ed. 2009); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069, at 350 (2d ed. 1997).

This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s "contrary to law" standard and review under Rule 72(b)'s de novo standard.

To complete the picture, we limn the standard of review at this level. Here, too, the purely legal nature of the question controls: we, like the district court, must afford de novo review to the purely legal question of whether the Agreement provides for mandatory arbitration of the parties' dispute. See Osband v. Woodford, 290 F.3d 1036, 1041 (9th Cir. 2002).

**B.**

Arbitration is a matter of contract. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995). In this case, the Agreement contains a choice-of-law provision in favor of the laws of the United States. The parties agree that this provision brings into play the federal common and statutory law.

In construing a contract governed by federal common law, courts must be guided by common-sense rules of contract interpretation. Smart v. Gillette Co. Long-Term Disab. Plan, 70 F.3d 173, 178 (1st Cir. 1995); Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir. 1989). And although more a product of the Federal Arbitration Act than of federal common law, per se, federal law undeniably includes a policy favoring arbitration. See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989). At a minimum, this policy requires

-9-

that "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration."  Id.

Syntel contends that this policy creates a presumption of arbitrability here.  PowerShare demurs, relying principally on our decision in Paul Revere Variable Annuity Insurance Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000), which it characterizes as limiting the presumption of arbitrability to questions about the scope of an arbitration agreement (as contrasted with questions about the existence of such an agreement).  Because the issue in this case is whether a mandatory arbitration agreement exists, PowerShare contends that the presumption does not attach.

Despite the parties' importunings, we need not decide whether the federal policy favoring arbitration applies here.  Even if we assume that the presumption does not affect the decisional calculus, the plain language of the Agreement mandates arbitration. Thus, the applicability vel non of the presumption makes no ultimate difference.

With this question set to one side, we go directly to the language of the Agreement itself.  Paragraph 18, quoted above, sets out the mechanisms for resolving disputes between the parties.  The first sentence provides that all disputes "shall be resolved amicably between Syntel and PowerShare."  The second sentence provides that if a dispute cannot be resolved amicably, it "shall be settled in accordance with the principles and procedures of the

-10-

American Arbitration Association and per the decision of an accredited arbitrator."  The third sentence states that "[n]othing in this clause shall prejudice Syntel or PowerShare's right to seek injunctive relief or any other equitable/legal relief or remedies available under law."

In deciding whether this language mandates arbitration, we are mindful that "an interpretation which gives effect to all the terms of a contract is preferable to one that harps on isolated provisions, heedless of context."  Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996); see Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1084 (1st Cir. 1989).  In line with this wise counsel, we strive for a reasonable interpretation of the Agreement as a whole, while avoiding constructions that would render any term within it meaningless.  Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 12 (1st Cir. 2001); Jimenez v. Penin. & Oriental Steam Navig. Co., 974 F.2d 221, 223 (1st Cir. 1992).

PowerShare urges us to focus on the third sentence of Paragraph 18 and to read that sentence as reserving to the parties the right to pursue remedies at law (that is, the right to litigate in court).  In order to square this interpretation with the second sentence of Paragraph 18, PowerShare suggests that the parties intended arbitration to be an optional mechanism for dispute resolution.

-11-

Although PowerShare's interpretation of the third sentence may be plausible when read in isolation, that interpretation cannot be reconciled with the unvarnished language of Paragraph 18's second sentence. That sentence states explicitly that disputes between the parties "shall" be settled through arbitration. The word "shall" denotes obligation, not choice; therefore, accepting PowerShare's interpretation of the third sentence would drain the second sentence of its essential meaning. Put bluntly, the word "shall" in the second sentence would be rendered nugatory were we to read the arbitration provision as creating nothing more than an option. That PowerShare's interpretation of Paragraph 18 would negate the obvious meaning of the second sentence is a powerful argument against accepting that interpretation. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 64 (1995) (rejecting reading of two clauses in an arbitration agreement as "untenable" when that reading "sets up the two clauses in conflict with one another"); Blackie, 75 F.3d at 722 (rejecting reading of one section of a contract when that reading would "flatly contradict[]" other sections); see also Smart, 70 F.3d at 179 ("Accepted canons of construction forbid the balkanization of contracts for interpretative purposes.").

We conclude that the only sensible reading of Paragraph 18 is that the second sentence mandates arbitration and the third sentence furnishes the arbitrator with broad legal and equitable

-12-

powers should either party seek special kinds of relief (say, an injunction). This is the only plausible interpretation of the third sentence that fits with, and gives effect to, the plain meaning of the second sentence.[3]

In an endeavor to deflect the force of this reasoning, PowerShare argues that a jury trial is a "remedy" preserved in the third sentence. It says that because only a court can implement such a remedy, the interpretation that we propose must be incorrect.

This argument is unconvincing. Unlike the second sentence, which plainly mandates arbitration, the reference in the third sentence to "any other equitable/legal relief or remedies available under law" never mentions jury trials (or, for that matter, recourse to the courts). Moreover, there is no textual support for a belief that this reference necessarily includes jury trials.

PowerShare tries to counter-punch by citing a pair of decisions holding that "remedies" include "jury trials." But some words mean different things in different contexts, see United States

---

[3] Other courts have reached similar conclusions. See, e.g., Laughton v. CGI Techs. & Sol'ns, Inc., 602 F. Supp. 2d 262, 265 (D. Mass. 2009) (holding, in similar circumstances, that "[t]he correct reading of the Arbitration and Cumulative Remedies provisions is that arbitration is mandatory, but the arbitrator is not limited to awarding certain remedies" (citation and internal quotation mark omitted)); Kingstown Corp. v. Black Cat Cranberry Corp., 839 N.E.2d 333, 338 (Mass. App. Ct. 2005) (holding, in similar circumstances, that the agreement "provides an aggrieved party with the right to mandatory arbitration while also empowering an arbitrator to grant injunctive or other equitable relief").

v. Romain, 393 F.3d 63, 74 (1st Cir. 2004) (explaining that "words are like chameleons; they frequently have different shades of meaning depending upon the circumstances"); and when context is taken into account, the decisions on which PowerShare relies are off-point. Each of them interprets a savings clause in a maritime statute. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 454-55 (2001) (holding that "[t]rial by jury is an obvious . . . example of the remedies available" under the savings to suitors clause of 28 U.S.C. § 1333(1)); Curcuru v. Rose's Oil Serv., Inc., 802 N.E.2d 1032, 1037 (Mass. 2004) (holding that savings clause of the Death on the High Seas Act preserves jury trial right in state court). These decisions, immersed in the historical context of admiralty law, offer little guidance for the issue of contract interpretation with which we must grapple. See, e.g., Laughton v. CGI Techs. & Sol'ns, Inc., 602 F. Supp. 2d 262, 265 (D. Mass. 2009) (rejecting argument that reference to "remedies" in an agreement containing a mandatory arbitration clause preserves a party's right to litigate and, thus, renders the arbitration provision elective); Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So. 2d 159, 164 (Ala. 1999) (similar).

In the end, we come full circle. Reading the "remedies" language in the third sentence to allow access to a jury trial would place this provision at cross purposes with the mandatory arbitration provision spelled out in the second sentence. That

would violate one of the cardinal rules of contract interpretation: "that a document should be read to give effect to all its provisions and to render them consistent with each other." Mastrobuono, 514 U.S. at 63. Confronted with two competing interpretations of the "remedies" language, we must give preference to the one that makes sense of the Agreement as a whole. See Blackie, 75 F.3d at 722.

PowerShare tries to turn this principle to its advantage. It asserts that our reading of the third sentence — to afford the arbitrator broad power to dispense legal and equitable remedies — renders that sentence superfluous because, under the AAA's rules, an arbitrator already has those powers. As support for this assertion, PowerShare identifies Rule 34(a) of the AAA's Commercial Arbitration Rules, which allows an arbitrator to "take whatever interim measures he or she deems necessary."

Here, however, the parties went beyond Rule 34(a); they agreed to vest in the arbitrator broad powers extending to the arbitrator's final decisionmaking, not just powers in connection with interim relief. The "remedies" provision, read in this way, is not superfluous but, rather, makes perfect sense. In commercial arbitration cases, the scope of a final award is governed by Rule 43(a), which provides that the arbitrator "may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties" (emphasis supplied). Because an arbitrator's power to award relief can be shaped by the parties'

-15-

agreement, it is reasonable — and certainly not redundant — for the parties to clarify that the person arbitrating their disputes will be free to choose from the widest possible array of remedies. Consequently, PowerShare's superfluity argument fails.

The short of it is that the Agreement as a whole admits of only one reasonable interpretation: the parties are obliged to submit their disputes to arbitration. See Fashion House, 892 F.2d at 1084 ("Black letter law teaches that 'a construction which comports with the Agreement as a whole is to be preferred even if it be thought that certain language, viewed only by itself, more readily suggests something else.'" (quoting Spartans Indus., Inc. v. John Pilling Shoe Co., 385 F.2d 495, 499 (1st Cir. 1967))).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we reverse the decision appealed from and remand the case to the district court for the entry of an order staying the litigation pending the resolution of the parallel arbitration proceeding, dissolving the existing stay of arbitration, and making such other provisions consistent with this opinion, as the district court may deem meet.

**Reversed and remanded**.