**BARLETTA HEAVY DIVISION, INC., Plaintiff,**

v.

**ERIE INTERSTATE CONTRACTORS, INC., Phoenix Development & Construction, Inc., Gregory Zafirakis, Steven Moutsastos, Steven Zafirakis and Erie Painting & Maintenance, Inc., Defendants.**

**Civil Action No. 09–10143–NMG.**

United States District Court,
D. Massachusetts.

Dec. 29, 2009.

Katherine M. Flaws, Joseph F. Leighton, Jr., Wilson, Elser LLP, Kevin P. Mannix, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, David P. Russman, Pepe & Hazard, Christopher M. Sheehan, Joshua Vitullo, Sheehan Vitullo LLP, Boston, MA, F. Douglas Novotny, Wilson, Elser, Moskowitz, Eldelman & Dicker, LLP, Syracuse, NY, for Defendants.

Nora L. Marantz, Richmonds & Co., LLC, Wellesley Hills, MA, Laurence K. Richmond, Laurence K. Richmond & Associates, PC, Quincy, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

This is a breach of contract action arising out of two related contracts. Plaintiff Barletta Heavy Division, Inc. ("Barletta") brought suit against defendants Erie Interstate Contractors, Inc. ("Erie"), Phoenix Development and Construction, Inc. ("Phoenix"), Gregory Zafirakis ("Gregory"), Steven Zafirakis ("Steven"), Steven Moutsastos ("Moutsastos"), Markos Bahas ("Bahas") and Erie Painting and Maintenance, Inc. ("EPM").[1] Plaintiff seeks a declaratory judgment that it is entitled to repossess defendants' equipment pursuant to a security agreement (Count I) and that the defendants are liable to it for breach of a subcontract (Count II), unjust enrichment (Count III), violation of the Massachusetts Consumer Protection Act (M.G.L. c. 93A) (Count IV) and breach of the security agreement (Count V). Various cross claims and counterclaims have also been filed. Before the Court is a motion to dismiss filed by all defendants except EPM ("the moving defendants") based upon a forum selection clause in the subcontract.

## I. Background

Barletta was the general contractor on a project for Massport known as the "Pier Rehabilitation Project" in Boston, Massachusetts ("the Project"). Barletta hired Erie as a subcontractor for the Project to provide labor, material and equipment to clean, prepare and paint a new and existing "under deck structural steel support system." Barletta and Erie entered into a subcontract agreement ("the Subcontract") on July 21, 2006, whereby Erie agreed to perform specified work and Barletta eventually agreed to pay $2,211,515.

Erie began work on the Project in August, 2006 but soon experienced financial difficulty. Because of that difficulty and because Erie was behind schedule on its work, Barletta paid a number of Erie's Project-related costs and taxes between January and September, 2007. Barletta maintains that it did so to keep the Project on track and to avoid a liquidated damages claim by Massport but that it never told Erie that it would not back charge for

---

1. Bahas has been voluntarily dismissed as a defendant.

those payments. Erie responds that Barletta never indicated that it would so back charge.

In late 2007, Erie's Chairman, Gregory, made several requests to Barletta seeking additional financing that would allow Erie to continue work on the Project. After one such request, Barletta agreed to lend Phoenix, a related company, $150,000 pursuant to a Revolving Credit Promissory Note and a Security Agreement ("the Security Agreement"). The Security Agreement was entered into by Erie, Phoenix and, in their individual capacities, Gregory, Steven, Moutsastos and Bahas (collectively "the Debtors").[2] Because the Security Agreement provided Barletta with a blanket security interest in all of the Debtors' assets, Barletta's Subcontract with Erie became secured by all of those assets.

The $150,000 loan to Phoenix was apparently repaid in January, 2008 but Barletta did not release the Debtors from their obligations under the Security Agreement at that time. A few months later, Erie again informed Barletta that it was having financial difficulties. Barletta asserts that on March 20, 2008, Erie suspended all work on the Project allegedly because Barletta had reneged on its promise to pay Project-related costs incurred by Erie. Erie responds that it suspended work because of extreme high tides and the impending Easter Holiday. It also maintains that it informed Barletta that it would return to the project on March 25, 2008. On March 24, 2008, however, Barletta notified Erie by letter that it was terminating the Subcontract for non-performance.

## II. *Procedural History*

Barletta filed its complaint on January 30, 2009, along with a motion for a preliminary injunction to prohibit the defendants from transferring or disposing of any assets covered by the Security Agreement. At an initial hearing on March 6, 2009, the Court allowed the motion. An injunction was entered on March 11, 2009, against the moving defendants and, after those defendants stated that they did not oppose its continuation, it was extended through the duration of this litigation.

In the meantime, the Court held two additional hearings related to preliminary injunction motions. On March 20, 2009, the moving defendants filed their own motion for a preliminary injunction, seeking the return of unspecified equipment allegedly in the custody of Barletta. The Court heard oral argument on the day the motion was filed and again on April 10, 2009. After the parties reported that they could not resolve the matter on their own, the Court issued a Memorandum and Order on May 15, 2009, denying the moving defendants' motion for a preliminary injunction.

At the April 10 hearing, the Court also set various "fast-track" scheduling deadlines culminating in trial to start on February 1, 2010. On October 13, 2009, prior counsel for the moving defendants moved to withdraw, citing an irretrievable breakdown in the attorney-client relationship. Current counsel filed a notice of appearance on October 23, 2009, and the pending motion to dismiss four days later. Plaintiff filed its opposition on November 9, 2009.[3]

2. EPM signed a separate security agreement in which it attempted to insulate itself from any liability to Barletta beyond its guarantee of the $150,000 loan.

3. Also pending are defendants' motion to modify the scheduling order filed on November 18, 2009 and plaintiff's motion for summary judgment filed 11 days later. The former is opposed and defendants have indicated that they are awaiting resolution of their motion to dismiss before responding to plaintiff's motion for summary judgment.

## III. *Analysis*

### A. **Legal Standard**

The moving defendants filed a motion to dismiss pursuant to the following forum selection clause in the Subcontract:

Any and all claims or disputes not specifically covered elsewhere in this Agreement arising out of or relating to this Agreement or breach thereof shall be decided, at the sole discretion of [Barletta], either by submission to (1) arbitration ... or (2) judicial decision by the Suffolk Superior Court in the Commonwealth of Massachusetts....

Because this provision refers to both arbitration and judicial involvement, it implicates potentially conflicting doctrines pertaining to the enforcement of forum selection clauses and arbitration rights. Those doctrines are considered in turn.

### 1. **Forum Selection Clauses**

■ Under First Circuit law, a motion to dismiss based upon a forum selection clause is treated as one alleging a failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387 (1st Cir.2001). Accordingly, such a defense can be raised at any time before disposition on the merits and it is preserved against waiver prior to that time. *Id.* at 388; 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1392 (3d ed. 2009).

If a defense based upon a forum selection clause is properly before the Court, the threshold question becomes whether the clause is permissive or mandatory. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir.2009). Although each contract must be interpreted under its own specific language, *Silva*, 239 F.3d at 388, the First Circuit has found words such as "shall", which carry a "mandatory sense", to demonstrate parties' exclusive commitment to the named fora. *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir.2001). Thus, the phrase "will be submitted to arbitration ... or ... to the Courts of the State of New York" did not "permit the parties to choose any forum imaginable" but instead "require[d plaintiff] to choose one of the two named forums." *Id.* at 12–13.

■ A mandatory forum selection clause carries a "strong presumption of enforceability". *Rivera*, 575 F.3d at 18. An opposing party must

clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching [or that its enforcement would be] contrary to the public policy of the forum.

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

Although the burden upon a party opposing a forum selection clause is significant, enforcement may be denied as unreasonable for diverse reasons. Where any alleged inconvenience is foreseeable at the time of contracting, for example, trial in the chosen forum is unreasonable if it is "so gravely difficult and inconvenient that [the party seeking to escape the contract] will for all practical purposes be deprived of [its] day in court." *Id.* at 18, 92 S.Ct. 1907. Moreover, courts have found enforcement to be unreasonable (and inefficient) where the clause does not apply to all parties or claims and enforcement would, therefore, entail parallel suits in separate fora. *E.g., Woods v. Christensen Shipyards, Ltd.*, No. 04–cv–61432, 2005 WL 5654643, at *11 (S.D.Fla. Sept. 23, 2005) (citing other cases). *Cf. Pixel Enhancement Labs., Inc. v. McGee*, No. 97–cv–12283 (RGS), 1998 WL 518187, at *2–3 (D.Mass. Aug. 5, 1998) (denying motion to dismiss under forum selection clause

where state law did not favor splitting causes of action and the majority of claims were not covered by the clause).

### 2. Arbitration Clauses

On the one hand, the Supreme Court has stated that an agreement to arbitrate before a specified tribunal "is, in effect, a specialized kind of forum-selection clause," *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) and should be enforced under the Federal Arbitration Act just as with any other contract. *Volt Info. Scis, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

■■■■ It is, however, also well-settled First Circuit law that, unlike a Fed. R.Civ.P. 12(b)(6) defense (the method for invoking a forum selection clause), parties "may waive their right to arbitration and present their dispute to a court" before disposition on the merits. *E.g., Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 221 (1st Cir.1995) (citation omitted). Waiver can be implicit and factors guiding the determination of whether waiver has occurred include whether 1) the party has participated in the lawsuit, 2) there has been a long delay in seeking the stay, 3) the defendants have invoked the jurisdiction of the court by filing a counterclaim and 4) discovery pursuant to the federal rules has taken place. *Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir.2001) (citation omitted). Because waiver is not to be lightly inferred, however, plaintiffs must show prejudice beyond mere delay. *Id.* (citations omitted).

### B. Application

The moving defendants contend that the Subcontract's forum selection clause requires that this case be dismissed without prejudice to be re-filed in state court or arbitration. Specifically, they argue that:

1) a motion to dismiss based upon a forum selection clause may be raised at any time before disposition on the merits and, therefore, the instant motion is timely;

2) the clause is mandatory and clearly encompasses all of the claims in this case; and

3) enforcement of the clause would not be unreasonable or fraudulent given the strong presumptions in favor of both arbitration and forum selection clauses.

Citing case law on waiver of arbitration rights, the moving defendants conclude that, despite the delay in bringing the motion, there is no significant prejudice to plaintiff. They submit, for example, that discovery has been minimal and, in any event, will be relevant in either state court or arbitration. They also point out that the instant motion was filed just four days after current counsel replaced the moving defendants' original counsel.

Plaintiff admits that a motion to dismiss based upon a forum selection clause can be brought at any time and does not dispute that this case is covered by the clause. Plaintiff contends, however, that defendants' entire course of conduct in this case constitutes a waiver of any such right. Barletta points out, for instance, that

1) under this Court's scheduling order, discovery is now closed;

2) trial is imminent (currently set for February, 2010); and

3) defendants have submitted to this Court's jurisdiction by waiting this long and by moving for and disputing various preliminary injunctions.

Plaintiff also claims that it has been prejudiced by defendants' dilatory tactics and

that a change in counsel should not excuse their actions.

### 1. Applicable Doctrine

At the outset it is noted that this case is complicated by the hybrid nature of the disputed clause (i.e., its reference to both arbitration and a judicial forum). If the clause is construed as an arbitration provision and, therefore, as being amenable to waiver, many of the factors identified in the *Creative Solutions* decision weigh in favor of finding that defendants waived their right. If, however, the clause is more properly labeled as a forum selection clause, which may be invoked any time before disposition on the merits, Barletta's citation to waiver factors, although compelling, is discountable.[4]

Neither party adequately addresses this dilemma in their memoranda but the Court believes the clause is more properly considered to be a mandatory forum selection clause. *See, e.g., Eastern Bridge, LLC v. Bette & Cring, LLC*, No. 05-cv-411 (SM), 2006 WL 1428275, at *3 (D.N.H. 2006) (construing a mandatory clause directing arbitration or a specific judicial forum to be a forum selection clause). The Court, therefore, will apply the doctrine endorsed by the Supreme Court in *Bremen* and its progeny regarding enforcement of forum selection clauses.

### 2. The Merits

■ Construing the provision as a forum selection clause is not conclusive in this case, however, because the moving defendants' motion falls short even with the advantage of the usual enforceability of such clauses. Specifically, the Court finds that to enforce the Subcontract's forum selection clause would be "unreasonable and unjust" because 1) it is invoked way too late in the proceedings and 2) it would not result in the dismissal of the entire case. *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

#### a. Lateness

The moving defendants' substantial delay in filing this motion is compelling grounds for its denial. To be sure, trial in another forum may not be "so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of [its] day in court." *Id.* at 18, 92 S.Ct. 1907. Nor is the Court oblivious to the thrust of the holding in *Bremen* which requires truly exceptional circumstances to deny enforcement of a forum selection clause under the generic pronouncement that it would be "unreasonable and unjust".

Nevertheless, several factors lead this Court to conclude that a belated enforcement of the forum selection provision is unwarranted here. To begin, the discovery deadline has now passed and trial is at hand. Moreover, this Court has, after several filings and hearings, considered motions for injunctive relief and entered a preliminary injunction against the moving defendants for the duration of this litigation. Finally, the scheduling order in this case was entered on the basis of a so-called "fast-track" at the parties' request. To dismiss the case now and require re-filing in state court or arbitration would cause considerable delay that would directly contradict the previously-articulated, mutual desire for a speedy resolution. *Cf. Consol. Insured Benefits, Inc. v. Conseco Medical Ins. Co.*, No. 03-cv-3211 (RBH), 2006 WL 2864425, at *5-6 (D.S.C. Oct. 4, 2006) (find-

---

4. Although contractual rights are generally subject to waiver by unequivocal conduct, *e.g., McAdams v. Mass. Mut. Life Ins. Co.*, No. 99-cv-30284 (FHF), 2002 WL 1067449, at *7 (D.Mass.2002), the plain language of the *Silva* opinion seems to preclude such a finding with respect to a forum selection clause.

ing that the statute of limitations may have barred re-filing plaintiffs' claims but stating more generally that "[t]o start the ball game all over again in a new forum when the parties have made it through the eighth inning here, would be unreasonable and unjust.").

### b. Inconclusiveness

The Court's decision not to enforce the forum selection clause is supported by the fact that the clause, even if applied, would not result in the dismissal of all parties or all claims. Although a non-party may be bound by a forum selection clause, that party must be closely related to the dispute such that it becomes foreseeable that it will be bound. *E.g., Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993).

Here, the Subcontract containing the disputed clause is between Barletta and only one of several defendants (Erie). Even assuming that the clause may be invoked by the non-signatory moving defendants, it does not apply to EPM, which has filed its own counterclaims and a cross-claim and does not join in the instant motion. In an affidavit, EPM's Senior Project Manager states that EPM is unrelated to Erie and at no time participated in any way in the Project to which the Subcontract pertains. Moreover, that affiant asserts that EPM became embroiled in this dispute only after Erie was experiencing financial difficulty because EPM itself had previously provided financing to Erie and had collateralized some equipment to secure those loans. Such involvement would not likely have been foreseeable when Erie and Barletta entered into the Subcontract and EPM does not appear to be so closely related to Erie that the latter's Subcontract should bind it. *Hugel,* 999 F.2d at 209. As such, the Subcontract's forum selection clause is deemed not to cover EPM or its claims.

Because enforcement of the forum selection clause would require bifurcating this suit into two parallel actions, it would be inefficient and unjust to do so. As other courts have held, such a result would, at the very least, constitute an unnecessary and uneconomical waste of judicial resources. *E.g., Woods,* 2005 WL 5654643, at *11.

Accordingly, the moving defendants' motion to dismiss will be denied.

### ORDER

In accordance with the foregoing, the moving defendants' motion to dismiss (Docket No. 51) is **DENIED.**

So ordered.