**P.R. TELEPHONE CO.,
INC., Plaintiff(s),**

v.

**TELECOMM. REGULATORY BOARD
OF P.R. et al., Defendant(s).**

**Civil No. 13–1186 (DRD).**

United States District Court,
D. Puerto Rico.

Signed April 5, 2014.

Eduardo R. Guzman–Casas, Drinker Biddle & Reath LLP, Washington, DC, for Plaintiff.

Eglee W. Perez–Rodriguez, Telecommunications Regulatory Board of Pr., Miguel J. Rodriguez–Marxuach, Rodriguez Marxuach, P.S.C., San Juan, PR, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION NUNC PRO TUNC

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court are: Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by co-defendant WorldNet Telecommunications, Inc. (hereinafter "WorldNet"), Docket No. 14; Response to Motion to Dismiss filed by Puerto Rico Telephone Co. (hereinafter "PRTC") Docket No. 15; WorldNet's Reply to Response to Motion to Dismiss, Docket No. 18; (d) *Report and Recom-*

*mendation* issued by the Magistrate Judge Silvia Carreno–Coll (hereinafter "Magistrate Judge"), Docket No. 25. For the reasons set forth below, defendant WorldNet's request for voluntary dismissal without prejudice is granted.

### Factual and Procedural Background

The purpose of the Telecommunications Act of 1996 ("The Act") is to promote competition in the local telephone services market. See 104 P.L. 104, 2; *Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd.*, 189 F.3d 1, 7 (1st Cir.1999). The Act imposes statutory duties on incumbent local exchange carriers ("ILECs") to share their networks with competitive local exchange carriers ("CLECs"), 47 U.S.C. § 251(c). ILECs have the duty to offer its retail services at wholesale rates to competing carriers that will resell the services at retail prices, 47 U.S.C. § 251(c)(4). The ILEC may negotiate and enter into binding agreements with CLECs these agreements referred to as interconnection agreements must be submitted to the state utility commission for approval or rejection, 47 U.S.C. § 252(a)(1). When seeking jurisdiction over a determination other than an approval or rejection, of an interconnection agreement, there must be a "substantial nexus between the commission's determination and the interconnection agreement." *Puerto Rico Tel. Co.*, 189 F.3d at 10.

The Court notes that the Magistrate Judge's *Report & Recommendation* is unopposed by either party therefore the Court hereby adopts all the finding of fact as stated in said *Report and Recommendation* Docket No. 25. Suffice it to say that this case concerns the Telecommunications Regulatory Board of Puerto Rico's (herein after "the Board")interpretation of a 2010 interconnection agreement entered into by PRTC and co defendant WorldNet. The crux of the matter lies in the Board's

determination that WorldNet could have a ten (10) day extension to formally request mediation, as to a particular dispute it was having with PRTC. For obvious reasons PRTC is in disagreement with the ten (10) day extension granted by the Board and its findings on the matter. As such PRTC filed suit in federal court claiming this Court had jurisdiction to review the Board's order granting the extension pursuant to Section 252. WorldNet filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), Docket No. 14, alleging this court lacked jurisdiction over the matter.

As such this matter was referred to the Magistrate Judge for a report and recommendation, (D.E. 14, 15 and 18). On February 6, 2014, the Magistrate Judge entered a *Report and Recommendation,* Docket No. 25. The Magistrate Judge recommended that the co-defendant's motion to dismiss, Docket No. 14, be GRANTED and the complaint, Docket No. 1 be DISMISSED. As of this date, no objections have been timely filed, thus, the Court deems this matter submitted. For the reasons set forth below, the *Report and Recommendation* issued by the Magistrate Judge, Docket No. 25, is hereby adopted *in toto,* as supplemented herein.

### Standard of Review

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."); Local Civil Rule 503 of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ.R."). *See: Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

An adversely affected party may contest the Magistrate's report and recommendation; 28 U.S.C. § 636(b)(1), in its pertinent part states: "within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate". Failure to file objections within the specified time waives the right to appeal the District Court's order, *See:* Local Rule 510.2(A), *Thomas v. Arn.,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

"Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296 (D.Puerto Rico, 2001) *affirmed by Nogueras–Cartagena v. United States,* 75 Fed.Appx. 795 (1st Cir. (Puerto Rico) 2003) (not selected for publication in the Federal Reporter, No. 03–1113), *cert. denied by Nogueras–Cartagena v. Department of Justice,* 540 U.S. 1183, 124 S.Ct. 1424, 158 L.Ed.2d 87 (2004), *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992).

In the instant case, no objections to the Magistrate Judge's *Report and Recommendation* have been filed. Thus, in order to accept the unopposed *Report and Recommendation,* the Court needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record.

*Nogueras–Cartagena v. United States, Id.; See: Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc* ) (extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982) (*en banc* ) (appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) ("when no objections are filed, the district court need only review the record for plain error").

As previously explained, since the Magistrate Judge's *Report and Recommendation* is unopposed, this Court has only to be certain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. Hence, after a careful analysis, the Court finds no "plain error" and agrees with the Magistrate Judge's conclusions. "There is little point in attempting to reinvent a well-fashioned wheel. Where, as here, a magistrate judge astutely takes the measure of a case and hands down a convincing, well-reasoned decision, [the Court] should refrain from writing at length to no other end than to hear its own words resonate." *Nogueras–Cartagena* at 305 citing *Corrada Betances v. Sea–Land Service, Inc.* 248 F.3d 40, 42 (1st Cir.2001); *Lawton v. State Mut. Life Assur. Co.,* 101 F.3d 218, 220 (1st Cir.1996).

The Court is particularly impressed by the fact the Seventh Circuit has expressly decided that state interconnection agreements constitute fundamentally state law questions of contract interpretation. *Illinois Bell Tel. Co. v. Worldcom Technologies, Inc.,* 179 F.3d 566, 569 (7th Cir.1999) (calling for adjudication by the states under the law of contracts). The United States Court of Appeals for the First Circuit ("First Circuit") has suggested that this decision is correct. *Puerto Rico Telephone Company, Inc. v. SprintCom, Inc.,* 662 F.3d 74, 87 (1st Cir.2011). The Fifth, Sixth and Ninth Circuits have come to the same conclusion, as well studied by the Magistrate Judge. *See Report and Recommendation,* Docket No. 25, pages 8–9 and Fn. 4, citing *Global NAPs California, Inc. v. Public Utilities Com'n of State of California,* 624 F.3d 1225 (9th Cir.2010); *Michigan Bell Telephone Co. v. MCIMetro Access Transmission Services, Inc.,* 323 F.3d 348 (6th Cir.2003); *Southwestern Bell Telephone Co. v. Public Utility Com'n of Texas,* 208 F.3d 475 (5th Cir.2000).

Hence, the facts, as found by the Board and the Magistrate Judge are subject to the "plain error" test. The Court finds no plain error and agreed with the analysis of the Magistrate Judge, Docket No. 25, pages 12–14.

### Analysis

As stated above, the *Report and Recommendation* issued by the Magistrate Judge, Docket No. 25, stands unobjected. After a careful review and in absence of plain error, the Court hereby **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate Judge's *Report and Recommendation,* Docket No. 25, to the instant Order.

### Conclusion

For the reasons stated above, the Court finds that there is **no plain error** in the Magistrate Judge's *Report and Recommendation,* Docket No. 25. Hence, the *Report and Recommendation* is hereby adopted *in toto,* as supplemented herein, and the instant action is **DISMISSED WITHOUT PREJUDICE.**

Judgment is to be entered accordingly.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

SILVIA CARREÑO–COLL, United States Magistrate Judge.

In this action for judicial review of a decision of the Telecommunications Regulatory Board of Puerto Rico, the presiding district judge has referred to the undersigned for a report and recommendation Defendant WorldNet Telecommunications's motion to dismiss. We recommend that the motion be granted.

### I. Background

This case concerns the Board's interpretation of an interconnection agreement entered into in 2010 by PRTC and Co–Defendant WorldNet. Under the Telecommunications Act of 1996, incumbent local exchange carriers ("ILECs"), like PRTC, must share their facilities with so-called competitive local exchange carriers ("CLECs"), like WorldNet. *See* 47 U.S.C. § 251(c)(2). To this end, the Act requires companies to "interconnect" their networks, "allow[ing] customers of one [carrier] to call the customers of another." *PRTC v. SprintCom,* 662 F.3d 74, 80 (1st Cir.2011); *see also id.* at 80 n. 3. Under the act, a CLEC makes an interconnection request, 47 U.S.C. § 251(a)(1), and the parties attempt to agree voluntarily and via mediation to the agreement's terms, *id.* § 252(a). If this fails, the parties may petition the relevant state commission—here, the Board—to order arbitration. *Id.* § 252(b). Once an agreement is arrived at through arbitration, the state commission must approve it before it can take effect. *Id.* § 252(e).

PRTC and WorldNet reached an agreement via arbitration that was approved by the Board. Docket No. 1, ¶ 12. The

agreement contemplated that WorldNet might make various liquidated damages claims against PRTC, and it put in place a process by which such claims could be considered. *See* Docket No. 1–1, § 24. According to the agreement's scheme, WorldNet was required to issue a payment demand within sixty days of an event giving rise to a liquidated damages claim, or within sixty days of learning of such an event. *Id.* § 24.1. Within ten days of that demand letter, the parties would have to meet and begin negotiations; the negotiations period would last a quick thirty days. *Id.* § 24.2. The agreement then provides that if "the Parties fail to agree, they will proceed to mediation before a Board-appointed mediator." *Id.* § 24.4. The agreement also states that "[t]he request for mediation shall be made within two (2) Business Days of the Parties' determination that they cannot agree on a resolution." *Id.* § 24.4.1. If mediation fails, the parties proceed to various other forms of dispute resolution. *See id.* § 24.5.

The particular dispute giving rise to this case began on September 30, 2012, when WorldNet sent a demand letter to PRTC regarding liquidated damages. Docket No. 1, ¶ 16. The parties met and conferred, and PRTC accepted liability as to a small amount of the claims; however, a dispute remained as to the remaining amount. *Id.* ¶ 17. This was confirmed by a letter from PRTC's counsel. *Id.; see also* Docket No. 1–4. According to PRTC, WorldNet responded with another letter, dated November 30, 2012, "reflecting its agreement that there was a dispute (and thus that the parties had been unable to come to a resolution)." Docket No. 1, ¶ 17. In fact, however, the letter cedes to some of PRTC's demands.[1] Docket No. 1–5, at

---

1. Though our review of a motion to dismiss is normally limited to the pleadings, "we may consider" documents, like WorldNet's letter, that are attached to and incorporated into the complaint. *Giragosian v. Bettencourt,* 614 F.3d 25, 27–28 (1st Cir.2010).

1 ("[W]e understand PRTC's disputes and while we disagree with some and sustain our validity of the claims, we have also determined to grant PRTC's dispute, in part."). Indeed, WorldNet adjusted its claims downward, from $606,750 after the meet and confer, see Docket No. 1, ¶ 17, to $567,500 after PRTC's letter, see Docket No. 1–5, at 3. WorldNet's letter referred to this as an "adjustment to our initial claim," and it noted that WorldNet intended to seek mediation "[t]o the extent that PRTC does not indicate its acceptance" of that adjustment. Id. at 1.

Then, on December 4, 2012, WorldNet filed a motion with the Board explaining that on November 30 it had "sent PRTC notice that the parties are not in agreement" regarding the damages and that it intended to seek mediation. Docket No. 1–6, at 1. WorldNet acknowledged that a request for mediation was due that day, but that it had not had time to collect all of the necessary documents; thus, it requested a period of ten days in which to file its request for mediation. Id. at 1–2. The Board granted this request. Docket No. 1, ¶ 19.

PRTC then sought reconsideration of the Board's order. Id. ¶ 20. In its motion for reconsideration, PRTC made much the same argument that it makes here: first, that the two-day period for requesting mediation was mandatory, and, second, that by extending that period, the Board had effectively rewritten the parties' agreement. See Docket No. 1–8, at 2. The Board denied this motion by way of a written opinion. Id. ¶ 21. The Board gave two primary justifications for denying PRTC's motion for reconsideration. First, it held that the two-day period to request

arbitration was not triggered on November 30, 2012, because it was not clear that the parties had jointly[2] agreed on that date as to the scope of their dispute. Docket No. 1–8, at 3. Because PRTC had not responded to WorldNet's adjustment of its claim, the Board wrote, it could not be concluded that "as of November 30, 2012, the Parties had jointly determined that they could not agree on a resolution of the liquidated damages claim." Id.; see also id. at 4 ("Here, the record is not sufficient to establish a firm date on which the Parties jointly determined that they could not agree on a resolution. . . .").

Second, the Board held that even if the request for mediation had been due on December 4, 2012, PRTC would still lose. The Board explained that the duty to request mediation was not WorldNet's alone. Id. at 4. To the contrary, the agreement gave to "the Parties," collectively, the duty to request mediation. See Docket No. 1–1, § 24.4 ("If the Parties fail to agree, they will proceed to mediation. . . . (emphasis added)). Thus, "to the extent that there ha[d] been a failure to adhere to the timing set forth in the [agreement], both Parties b[ore] responsibility." Docket No. 1–8, at 4. Thus, as WorldNet had at least been diligent in attempting to comply, where PRTC had not, the Board would not grant PRTC relief. And finally, the Board noted that the agreement did not include a provision that would allow the parties to bypass the mediation process because of their failure to meet the timing requirements. See id. at 4.

PRTC filed this lawsuit to seek judicial review of the Board's order granting WorldNet an extension of time to seek mediation.

---

2. As the Board noted, Docket No. 1–8, at 3, the agreement refers to "the *Parties'* determination that they cannot agree," Docket No. 1–1, § 24.4.1. The Board interpreted this to mean that both parties must affirmatively agree as to their lack of agreement. Docket No. 1–8, at 3.

## II.  Motion to Dismiss Standard

The standard for reviewing Rule 12(b)(6) motions is well-known, and we will address it only briefly.  A plaintiff's complaint must plead sufficient factual material to "raise a right of relief about the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Great factual specificity is unnecessary; what is required is a short and plain statement with "only enough detail to provide a defendant with 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 12 (1st Cir.2011) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).  The bottom line is that the "combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief." *Sepulveda– Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.).

## III.  Analysis

### A.  Jurisdiction

■  As an initial matter, we do not believe that this Court even has subject matter jurisdiction over this lawsuit.[3] PRTC makes two basic complaints about the Board's order.  First, it complains that the Board misinterpreted the agreement when it did not strictly apply the mediation-request provision.  PRTC attempts to strengthen its jurisdictional claim by claiming that the Board's actions effectively amended the agreement, in violation of § 252.  But the reality is that the correctness of the Board's decision hinges entirely on its interpretation of the agreement, and whether that interpretation was right. Second, PRTC complains about the Board's "arbitrary and capricious" factual finding that, as of November 30, 2012, the parties had not sufficiently agreed about the scope of their disagreement, and, as such, the mediation provision was not triggered.  In fact, though, this dispute too is one of interpretation of the agreement: did the Board correctly apply the facts of the case to the agreement's language?, or, more precisely, what does it mean for the parties to "fail to agree," Docket No. 1–1, § 24.4?

The substance of this lawsuit, then, is PRTC's seeking judicial review of the Board's interpretation of certain basic contract language in the agreement.  This is fundamentally a state-law question of contract interpretation. *See Ill. Bell Tel. Co. v. Worldcom Technologies, Inc.*, 179 F.3d 566, 574 (7th Cir.1999) (holding that a state commission's interpretation of an interconnection agreement's terms creates a problem "under the law of contracts" that should be adjudicated by the state); *see also Ill. Bell Tel. Co. v. Global NAPs Ill. Inc.*, 551 F.3d 587, 591 (7th Cir.2008) (same).[4]  Precedent from the First Circuit

---

3.  The First Circuit has been cautious in defining the scope of federal court review of state commission decisions.  As it has explained, "courts remain uncertain whether state commissions can enforce [interconnection agreements], whether state commissions ever must or should first interpret and enforce [interconnection agreements], and when federal courts have jurisdiction over [interconnection agreement]-enforcement actions." *Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 83–84 (1st Cir.2010) (footnotes omit- ted).  These and many related questions remained unanswered in this Circuit.

4.  We note that the First Circuit has not yet explicitly held that interpretation of interconnection agreements is a matter of state law, but, citing Seventh Circuit precedent, it has suggested as much. *See PRTC v. SprintCom, Inc.*, 662 F.3d 74, 87 (1st Cir.2011) (suggesting that a claim that the Board misinterpreted an interconnection agreement's provision "arguably may be construed as a state law contract enforcement action" (citing *Ill. Bell Tel.*

holds that such questions are unreviewable in the federal district courts unless they are supplemental to issues that more directly invoke federal subject matter jurisdiction. *See PRTC v. Telecomm. Regulatory Bd. of P.R.* (hereinafter, *"PRTC I"*), 189 F.3d 1, 13 (1st Cir.1999) ("Section 252(e)(6) does not confer authority on federal courts to review the actions of state commissions for compliance with state law.").[5] PRTC's attempts to recast its claims in terms of § 252 are likewise unavailing, as such a gambit was also rejected in *PRTC I. See id.* at 15 (rejecting argument that Board's violation of state law "automatically violated § 252").[6]

Thus, because PRTC's claims in this forum amount to nothing more than allegations that the Board mis-applied state contract law in interpreting the interconnection agreement, we lack jurisdiction and must, therefore, recommend that the suit be dismissed.

## B. Merits

■ Even if we believed the Court had jurisdiction, we would still recommend that the motion be granted and the case dismissed.

We will first discuss the Board's finding that the agreement's timing provision was not triggered on November 30, 2012. In doing so, we note that we give certain deference to the Board's findings. We review the Boards findings of fact only to

---

Co. v. Global NAPs, Inc., 551 F.3d 587, 591 (7th Cir.2008))). At a minimum, the Fifth, Sixth, and Ninth Circuit have come to the same conclusion. *See Global NAPs Cal., Inc. v. Pub. Utilities Comm'n of State of Cal.*, 624 F.3d 1225, 1228 (9th Cir.2010); *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 355 (6th Cir.2003) (applying Michigan law); *Sw. Bell Tel. Co. v. Pub. Utility Comm'n of Tex.*, 208 F.3d 475, 485 (5th Cir.2000) (applying Texas contract law to the interpretation of an interconnection agreement). The agreement itself requires that Puerto Rico law control where federal law does not, *see* Docket No. 1–1, § 28, and the parties likewise operate under the assumption that state law controls, *see*, *e.g.*, Docket No. 15, at 12. We can find no Circuits that have explicitly held to the contrary, though some, like the Fourth Circuit, have held that interconnection agreements implicate sufficiently important federal interests so as to create federal jurisdiction over all such disputes. *See Verizon Md., Inc. v. Global NAPs, Inc.*, 377 F.3d 355, 364–65 (4th Cir.2004); *see also Mich. Bell*, 323 F.3d at 356–57 (holding that federal courts may "review state commission interpretations for compliance with state law"). But as we explain below, such holdings are foreclosed to us by First Circuit precedent.

**5.** *PRTC* considered jurisdiction *only* under § 252, but we do not believe, and PRTC does not suggest, that § 1331's grant of jurisdiction, on which PRTC also relies here, would be any broader, as the dispute would still arise under state law. *See*, *e.g.*, *Ill. Bell v. Global NAPs*, 551 F.3d at 591. We also note that the First Circuit has found that federal courts *do* have jurisdiction to review state commission determinations of state law when those determinations are "essential for deciding whether to approve or reject an interconnection agreement." *WorldNet Telecomm., Inc. v. PRTC*, 497 F.3d 1, 11 (1st Cir.2007). That exception is not relevant to this case, however, because the Board was interpreting an already-approved agreement.

**6.** Because the agreement set a two-day period, which the Board extended, PRTC construes the Board's actions as amending the agreement (which would give rise to federal jurisdiction). But the Board purported to do no such thing, and a much fairer characterization of its actions, as we explain below, is that the Board interpreted the request provision in the context of the agreement's mandatory mediation provision. PRTC's jurisdictional argument boils down to a claim that any time the Board misinterprets an interconnection agreement, it effectively amends the agreement and acts without jurisdiction. This is exactly the sort of argument that the First Circuit rejected in *PRTC I*. The Board's application of state-law contract law, even if incorrect, is not a violation of federal law. *See PRTC I*, 189 F.3d at 15.

ensure that they were not arbitrary or capricious. *Centennial P.R. License Corp. v. Telecomm. Regulatory Bd. of P.R.*, 634 F.3d 17, 26–27 (1st Cir.2011). The Board's conclusions of law we review *de novo*, though we give its interpretations of interconnection agreements that it has approved some deference.[7] *PRTC v. SprintCom*, 662 F.3d at 89.

As we noted above, the Board looked first at the agreement's language, which made clear that the duty to request mediation was conditioned on "the Parties' determination that they cannot agree on a resolution." *See* Docket No. 1–1, § 24.4.1. The Board essentially concluded that no joint determination had been made, because in its November 30 letter to PRTC, WorldNet adjusted its initial claim. PRTC never thereafter expressed its assent or dissent to that adjustment. As such, the Board found that as of November 30, 2012, there had been no joint determination that a resolution could not be found. *See* Docket No. 1–8, at 3. The substance of PRTC's objection to this portion of the Board's opinion is that it was arbitrary and capricious because the parties had agreed that there was "a dispute as to certain liquidated damages claims." Docket No. 15, at 3. According to PRTC, on the record before it "the Board had no discretion to determine, as it erroneously did, that the parties had not determined that there was a dispute as to liquidated damages." *Id.* at 8.

We disagree. The Board appears to have considered the entire record, but it looked beyond the mere fact of the parties' agreement that there was a dispute to the substance of that dispute. The Board concluded that because the contours of the parties' disagreement were unknown as of November 30, the request provision had not been triggered. Implicit in the Board's opinion is a recognition that the disagreement clause's purpose is to make sure that the issues are well-defined at the time mediation begins. Given the extremely tight schedule contemplated by the agreement, *see* Docket No. 1–1, § 24.4.3–4.–6, mediation could not be effective if the scope of the conflict was changing during the mediation itself. Thus, it makes a great deal of sense to hold that the request provision is not triggered until the parties agree to the scope of their dispute. PRTC offers no explanation at all for why such an interpretation of the agreement's language is unreasonable or incorrect, and we find none; thus, we conclude that the Board made no error in reaching such an interpretation. PRTC's objection is, instead, to the Board's finding, based on the evidence, that there was no determination that the parties could not agree. But the Board considered the evidence in a much more complete way than PRTC asks us to do, and we find no error, much less arbitrariness.

■ PRTC also complains that the Board failed to properly interpret the agreement when it granted WorldNet an extension of time. Its argument in this regard is based almost entirely on the mandatory nature of the word "shall" in the agreement's provision requiring that the "request for mediation shall be made within two" business days of the parties determining that they cannot agree. *See* Docket No. 1–1, § 24.4.1. To be sure, the agreement's language is mandatory, but the Board never held otherwise. What the Board did is read that language in the

---

7. The First Circuit has "not perfectly calibrated the weight to be accorded to such an interpretation," but it has held that if the Board's interpretation "is reasonable then 'at the very least close calls tend to go its way.'" *PRTC v. SprintCom*, 662 F.3d at 89 (quoting *Boston Edison Co. v. FERC*, 441 F.3d 10, 13 (1st Cir.2006)).

context of the agreement as a whole. For example, the Board noted that the *mediation itself was mandatory.*[8] *See id.* § 24.4 ("If the Parties fail to agree, they *will* proceed to mediation...." (emphasis added)). The Board further noted that the duty to request mediation did not fall only on WorldNet, as the party seeking liquidated damages; instead, the Board held that the parties jointly had such a responsibility. Docket No. 1–8, at 4 (holding that the agreement "places the responsibility for making the request on both Parties").[9] The Board recognized that implicit in PRTC's opposition to the extension of time was an attempt to short-circuit the mediation proceedings, if not the whole liquidated damages dispute. The Board then held that, even if WorldNet had violated the agreement, *so had PRTC*—and WorldNet, at least, had attempted to comply. Thus, the Board held, PRTC could not be permitted to benefit from WorldNet's failure. In making this holding, the Board noted that the agreement lacked any

clause that would authorize waiver of mediation if the request provision were violated. *Id.*

In our opinion, the Board's analysis is eminently sensible. Yes, the timing of the request is mandatory, but it is also a duty placed on both parties.[10] It is "axiomatic that a party cannot benefit from its own breach" of a contractual term, *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 817 (6th Cir.1999); *see also* P.R. LAWS ANN. tit. 31, § 3373 ("The validity and fulfillment of contracts cannot be left to the will of one of the contracting parties."),[11] and so PRTC cannot complain of WorldNet's alleged failure. More importantly, the timing clause is a subdivision of the general mediation clause, which is itself mandatory. Especially given that the agreement contains no clause that would authorize waiving this mandatory mediation,[12] we think the Board correctly determined that the mediation must go forward, and, consequently, it was authorized to grant the extension of time.[13] We con-

---

**8.** In *Summit Packaging Sys., Inc. v. Kenyon & Kenyon,* the First Circuit interpreted very similar contractual language. 273 F.3d 9 (1st Cir.2001). At issue was a provision stating that disputes "will be submitted to arbitration ... or ... to the Courts of the State of New York." *Id.* at 12. Citing Black's Law Dictionary, the Circuit held that the contract committed disputes solely to those forums, because "will" was "a word commonly having the mandatory sense of 'shall' or 'must.' " *Id.* (internal quotations omitted).

**9.** When the interconnection means to put the burden on a single party, it does so with clarity. *See, e.g.,* Docket No. 1–1, § 24.5.2 (requiring that if the parties cannot agree to arbitration by the Board or a Board-appointed arbitrator, "the *complaining party* shall file an arbitration petition" with the American Arbitration Association (emphasis added)).

**10.** As such, PRTC's objection to "WorldNet's claim that it should face no consequences for *its* failure to comply with the terms of" the agreement, Docket No. 15 (emphasis added),

at 14, surely fails, as it was not WorldNet's failure alone.

**11.** *See, e.g., Colberg v. Trigo,* 16 P.R.R. 696 (1910) (holding that where a party expects to be benefitted by a contract, it must abide by all of the contract's terms); *Estate of Iglesias v. Bolivar,* 11 P.R.R. 422 (1906) (holding that a party demanding compliance with a contract's terms must have also complied with those terms itself).

**12.** With regard to other potential conflicts, the agreement *does* provide for what happens when one party fails to meet its obligations under the contract. For example, in the general dispute resolution section, the agreement provides that if a party fails to meet and confer, the aggrieved party may pursue various remedies. Docket No. 1–1, § 29.1.1.

**13.** PRTC offers no reason why the Board could not, as an exercise of its quasi-adjudicative powers in interpreting the interconnection agreement, afford the parties brief extensions of time to conduct proceedings before

clude, therefore, that the complaint should be dismissed on these grounds.

## IV. Conclusion

Because we find that this Court lacks jurisdiction over PRTC's complaint, we must RECOMMEND that PRTC's complaint be dismissed. But even if we considered the motion to dismiss on its merits, we would reject out of hand PRTC's characterization of the Board's actions as amending the interconnection agreement. The better characterization is that the Board was faced with two conflicting contractual provisions—a mandatory mediation provision and a mandatory mediation request provision—and it applied a construction of the agreement that was reasonable in both fact and law. As such, we would still RECOMMEND that World-Net's motion to dismiss, Docket No. 14, be GRANTED and the complaint, Docket No. 1, be dismissed.

IT IS SO RECOMMENDED.

The parties have five business days to file any objections to this report and recommendation. Docket No. 19, at 1. No extensions of time will be allowed. *Id.* Failure to file objections within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986).

In San Juan, Puerto Rico, this 6th day of February, 2014.

---

the Board. We are inclined to think that it could, *see* P.R. LAWS ANN. tit. 27, § 267i (granting to the Board incidental powers "pertinent and necessary to put into effect and carry out" its duties); *see also PRTC v. Junta Reglamentadora de Telecomunicaciones de P.R.,*

151 D.P.R. 269, 288–89 (2000) (recognizing that the Board has certain inherent powers to adjust its orders as dictated by justice and reason), but because the parties do not address the question, we will not take it up.